UNITED STATES FASTENER CO. v. BRADLEY.

(Circuit Court, S. D. New York. February 16, 1906. Rehearing Denied June 5, 1906.)

1. PATENTS—VALIDITY AND INFRINGEMENT—SEPARABLE BUTTONS.

The Pringle patent, No. 580,000, claim 1, for a separable button catch designed for use with a stud member to form a separable button or fastener, is for an operative device disclosing novelty and utility, and was not anticipated; also *held* infringed by the device of the Bradley patent, No. 735,655.

2. JUDGMENT—RES JUDICATA—DISMISSAL WITHOUT HEARING ON MERITS.

To constitute an adjudication of a cause of action which will bar a second suit thereon between the same parties, the judgment or decree must have been rendered after a trial or hearing on the merits, and it will not have such effect where it was a decree of dismissal in effect for failure to prosecute.

[Ed. Note.—For cases in point, see vol. 30, Cent Dig. Judgment, §§ 1028, 1040.]

In Equity. Action to restrain alleged infringement of United States letters patent and for an accounting. Defendant alleges that complainant's patent is invalid, and pleads noninfringement and former adjudication.

Donald Campbell (Hillary C. Messimer, of counsel), for complainant.

Joseph A. Arnold and James A. Carr, for defendant.

RAY, District Judge. The patent in suit, for "separable button," No. 580,000, issued April 6, 1897, application filed September 8, 1888, was granted on application of Eugene Pringle, assignor to Madison D. Shipman and Charles E. Bradt, and contains six claims, only one of which is in question. The complainant is now the owner of the patent. The claim in question reads as follows:

"(1) A separable button-catch comprising an apertured washer and an eyelet having a shank of less diameter than the aperture of the washer and having two enlargements securing it in the aperture of the washer and slitted lengthwise through the shank and the enlargements, as and for the purpose set forth."

The specifications say:

"My invention relates to improvements in the button-head and stud portions of separable buttons; and it consists in the devices and parts and combinations of devices and parts hereinafter described, and specifically set forth in the claims. The objects of my invention are, primarily, to provide in a button-head member of a separable button a tubular elastic stud holding or catching piece which is loosely held within the central opening provided in a disk or piece and provision for their attachment to the fabric, and, secondly, to provide specific means by which the improvements can be embodied in the button-head member and be secured to the fabric, and, further, to provide novel and economical means by which the stud member can be securely fastened to the fabric. * * * In the drawings, A is the elastic stud-catching piece which is made with the tubular body, a, and having flange, a¹ with its lower end. This piece has its wall slitted from top to bottom by slit, a², so that the said wall can be expanded by internal pressure exerted against its inner surface, as by the pressure of the head of the stud against the interior of the slitted body, a. B is the stud-catch holding-

piece having the vertical flange, b, and horizontal flange, b¹, and a central opening, b², of larger diameter than the outer diameter of the body, a, of the stud-catching piece, A. The stud-catching piece, A, is passed through opening, b², of piece, B, preferably from its lower side, and has its opposite and unflanged end portion turned down all around on the upper edge of the vertical flange, b, as shown in Fig. 1, so as to form with the body, a, of the stud-catch, A, and upper flange, a³, as indicated by dotted lines in Fig. 7. When this upper end portion of the stud-catch, A, is turned on the upper edge of flange, b, of piece, B, the stud-catch will be held in the opening, b², or piece, B, with the body, a, of the former out of contact with the vertical flange, b, of the latter, so that the said stud-catch can be readily expanded in its diameter by the head of the stud when passing through the same. In Fig. 32 this stud-catch, A, is shown to be held in place in the catch-holding piece, B, when the latter is disconnected from the other adjuncts. In Figs. 34 and 35 is shown a thicker piece, B, of metal, operating as a substitute for the piece, B, (having flange, b), which obviates the use of the flange, b.

The stud is thus described:

"I is the stud, which stud is made with the shell or hollow form, and with the bulb form of head, i, as shown in Figs. 1 and 4, and is provided with a base-flange, i¹. The head, i, of this stud is slightly larger than the bore of the stud-catch, A, so that when passing through the latter it will expand the slitted wall, a, of the same."

The connection of the button-head portion with the stud portion is described as follows:

"When the button-head portion of this separable button is to be connected with the stud portion of the same, the head, i, of the stud will be pressed up into the bore of the elastic stud-catch, A, when the latter will be expanded by the force of the pressure against the slitted wall, a, of the latter, and when the head of the stud has passed through said piece, A, it will securely hold with the upper side of the same and thereby unite the two portions of the fabric together. A pull of the stud away from the button-head will withdraw the latter."

A separable button such as is mentioned in the patent in suit is a fastener, the purpose of which is to temporarily secure together the two parts or flaps of a garment. The separable button complete consists of two principal portions; the stud portion attached to one flap and constructed with an enlarged or bulbous head, and the socket portion attached to the other flap of the garment so constructed as to catch or engage with the bulbous head of the stud. This socket portion or stud catching portion is formed with a central aperture through which the bulbous head of the stud portion passes when the two are engaged or disengaged. The one being attached to the one flap and the other to the other flap, when the bulbous head of the stud is pressed through the stud-catching portion, the two flaps of the garment are held together until it is desirable to disengage them. The disengagement is accomplished by pulling the bulbous head of the stud portion from the stud catching portion. To attach them together the head of the stud is pressed in to the stud-catching part, and to disengage them it is pulled out therefrom. To make this operation possible and effective in the patent in suit, the stud-catching portion is provided with a device capable of being resiliently expanded and contracted. It is expanded by the pushing in of the bulbous head of the stud or by pulling it out. It contracts automatically because of the nature of the metal of which it is composed. There are mechanisms or con-

trivances of this description where the resiliency is provided in the bulbous head of the stud, but in the patent in suit this is provided in the stud-catching member.

Claim 1 of the patent in issue here relates to the means by which suitable resiliency is provided in the socket portion or stud-catching part of the device. In this socket portion or stud-catching device we have a disk or washer with a central opening or aperture, mentioned also as the stud-catch holding piece, and at the edges of this central opening we have a vertical flange. The horizontal flange of the stud-catch holding piece mentioned in the specifications of the patent is the main body or portion of this disk or washer. Substantially this stud-catch holding piece is a flat disk or washer with a central aperture or opening having about its entire circumference a vertical flange of suitable width. The other portion of this stud-catching or socket portion and which is called the elastic stud-catching piece, consists of an eyelet or piece in the form of an eyelet, which is thrust through the aperture of the washer or stud-catch holding piece, and is there clinched in substantially the same manner that the common eyelet is clinched when papers or other substances are fastened together by means of an eyelet and an eyelet fastener. When this is done the result is two enlargements, one of the upper end of the eyelet and the other of the lower end thereof, one above and one below the aperture of the washer, and these enlargements retain the eyelet in its position in the central opening or aperture of the stud-catch holding piece. This eyelet has a lesser diameter than that of the aperture in the disk or washer, so that it is capable of being expanded without seriously affecting the disk, washer, or stud-catch holding piece. The vertical flange of the stud-catch holding piece is necessary when the disk or washer is thin, because then essential to the proper holding and maintenance in position of the eyelet. This flange is not necessary when the disk or washer is of substantially the same thickness as the length of the eyelet. The resiliency of the eyelet or stud-catching piece is provided in the following manner: It has its wall slitted from top to bottom, and the result is that the wall of this elastic stud-catching piece is expanded by the internal pressure against its inner surface when the bulbous head of the stud is pressed inward or is pulled outwardly. This eyelet or stud-catching piece. being of elastic material and prevented from expanding too much by the edges of the opening or aperture in the disk or washer so as to break it, it resumes its normal position the moment the bulbous head of the stud has passed through either when pressed inwardly or pulled outwardly. The washer or disk or stud-catch holding piece is not slitted and does not expand or contract. In the construction of the patent, when the upper end portion of the stud-catch is turned outwardly on the upper edge of the vertical flange of the disk, washer, or stud-catch holding piece, the stud-catch will be held in position and out of contract with the flange to such an extent that the stud-catch is readily expanded in its diameter by the bulbous head of the stud when passing through. It appears from the file wrapper that the application for this patent was a long time in the Patent Office. Claim 1 was for "a separable button catch consisting of a perforated

washer and a slitted eyelet having two enlargements adapted to secure it in the aperture of the washer substantially as and for the purpose set forth." It is obvious that this claim is not claim 1 of the patent as finally allowed. There is a difference between a perforated washer and an apertured washer. There is a difference between a slitted eyelet and an eyelet having a shank of less diameter than the aperture of the washer; the eyelet being slitted lengthwise through the shank and the enlargements thereof.

The defendant contends that in claim 1 of the patent in suit only two elements are specified, viz., the apertured washer and the eyelet, slitted lengthwise; that the relation between the eyelet and washer is specified, but that neither the claim nor the specifications suggest · even that these elements constitute a complete socket member for a separable button or a garment fastener. It is contended that the drawings and specifications show six elements, some of which are used to fasten the socket member to the garment, and that the specification treats the manner of attaching this member to the garment . as the primary object of the invention. The defendant contends that therefore, if the claim in suit is interpreted to cover broadly the apertured washer with a slitted eyelet mounted therein, it is for an incomplete combination and an inoperative device. The defendant also contends that if this claim is construed to include means for fastening the washer, including the slitted eyelet mounted therein, to the garment, then the defendant's device, alleged to infringe, cannot be brought within the scope of the claim. It is also contended that, giving claim 1 either construction, it is anticipated.

It is true that the drawings show and the specifications describe, not only the socket portion or stud-catching portion, but distinct means for attaching or fastening same to the garment. These means, or this fastening device, are, however described in other claims of the patent, 2 and 3, in combination with the device of claim 1. Claim 2 reads:

"A button head comprising a slitted eyelet, an apertured washer to which the eyelet is secured, a fastening eyelet connected thereto passed through the material and clenched to a cap or shell, substantially as described."

The specifications explicitly state that the invention relates to improvements in the button-head and stud portions of separable buttons, and that the primary objects of the invention are to provide, not a button-head member, but in a button-head member of a separable button "a tubular elastic stud holding or catching piece which is loosely held within the central opening provided in a disk or piece and provision for their attachment to the fabric, and, secondly, to provide specific means by which the improvements can be embodied in the button-head member and be secured to the fabric, and further to provide novel and economical means by which the stud member can be securely fastened to the fabric." It would seem clear that, first, we deal with and have mentioned the stud-catching portion described in claim 1; and, second, we have the specific means for embodying this stud-catching portion in the button head and the specific means for attaching the whole or both to the fabric as described in claims 2

and 3. These specific means for attachment form some of the elements of distinct claims. Then we have the stud portion, stud with bulbous head, etc., mentioned in claims 4, 5, and 6.

This separable button catch, claim 1, is clearly distinct from the specific means for attaching same to the garment described in claims 2 and 3. It is a complete and perfect device in and of itself, for the purpose described, and is operative if it may be attached to the fabric or garment. On mere inspection it is evident that means for attaching it to the fabric are not, necessarily, those referred to in claims 2 and 3 and described in the specifications, the use of which would do away with needle and thread, but needle and thread, by the use of which this socket portion, or stud-catching portion, may be securely and expeditiously and economically attached to the garment. It may be attached by the common needle and thread, not the proper subject of a claim in a patent, or by the novel device described in the patent. I do not think it was necessary to specify in the specifications "needle and thread" as means or "provision" for their attachment to the garment, or to say that this stud-catching portion might be attached to the garment by the seamstress or housewife by using a needle and thread for the purpose. I think we may properly read into claim 1 means or provision for attaching the device to the garment or fabric.

From the time the claim for this patent in suit was filed to the time it was allowed many changes were made therein, and at every stage the prior art in all its aspects was thoroughly examined and exhaustively considered. The entire prior art so far as pertinent was cited. These facts appear from the file wrapper. May 20, 1896, claim 1 had assumed this reading:

"(1) A separable button catch consisting of a perforated washer and an eyelet having two enlargements adapted to secure it in the aperture of the washer, substantially as and for the purpose set forth."

January 15, 1896, the word "an," before "eyelet," was erased, and the words "a slitted" substituted in place thereof. June 20, 1896, the claim was rejected, and the examiner said:

"It is not believed that claims 1 and 2 set forth anything patentable over the references of record, involving, as they do, nothing more than a split eyelet set in a washer plate. It is thought that the references fully anticipate said construction."

On appeal, involving claims 1 and 2, the examiners said, August 17, 1896:

"Pringle's patent No. 429,177 meets both claims as they are drawn. The contention that these claims cover only two elements constituting the complete button, while in the mentioned patent there are also other elements constituting a cover for the post, and that therefore the claims are not met, cannot prevail. The omission of the cover, thereby losing its function, does not make of the remainder a new invention. It is the same thing, whether used with or without the cover. The following claim expresses the structural difference between the patented and the appealed article: 'A separable button catch, comprising an apertured washer and an eyelet having a shank of less diameter than the aperture of the washer, and having two enlargements securing it in the aperture of the washer and slitted lengthwise through the shank and the enlargements, as and for the purpose set forth.' This is a novel catch. It is superior to that of the patent for the reason that

the so-slitted eyelet has for a given normal diameter a greater range of expansion and resiliency. There results a grasp of the eyelet closer to the shank of the ball, with a more firm hold under the ball, making a stronger fastening. The change, though small, constitutes, we think, a material improvement. The above claim we regard as expressing the improvement, and as allowable. We recommend, its insertion and allowance."

Claim 1 was changed or amended accordingly, and allowed. Its allowance was not the result of haste, or inadvertence, or ignorance of the prior art. The examiners deliberately hold that here is invention and that it is not anticipated. The defendant says:

"As stated above, the washer and the split ring alone do not and can not constitute a 'button-catch'; for, in the first place, they do not present the appearance of a button; in the next place, in practical use, they are between the flaps of the glove, where they are entirely concealed; and, in the third place, they alone are incapable of constituting a complete socket member, but require some means for fastening them to the garment. To construe claim 1, therefore, broadly for 'a washer and a split ring is to render the claim void for want of utility, for an inoperative device, and for an incomplete combination."

This court cannot agree with this contention. I assume that the "button catch" is designed to seize and hold the bulb-head of the stud. It is true that when this catch, or any button-catch device, is attached to one flap of a garment by some mechanical or metal means which in part protrudes through the garment and is fastened in some way on the outer side of the garment, and is thus exposed to view, it (this protruding and exposed part) is covered or concealed, usually, by something resembling a button. But this concealing device is in no way essential to the operativeness of the catch device. I see no point in the objection raised that the button catch is between the flaps of the glove or other fabric, as, for instance, the two parts of a lady's dress or cloak. If we would have an invisible apparatus, this is where they should be.

The third alleged objection urged has been met by the statement that this button-catch member, composed of the washer and slitted eyelet fixed therein, may be attached to the garment by the apparatus described in the patent, or by needle and thread (and it is not at all necessary that the stitches of thread go through the fabric), or in other ways. The Mandrill patent, No. 374,609, dated December 13, 1887, and the Platt patent, No. 181,979, dated September 5, 1876, are urged as anticipations of complainant's claim 1.

In the Mandrill patent, glove fastener, the button-catch member, is "a split expansible socket ring or annulus, the interior periphery of which is made smooth for the ready and free passage of the head of the post" (the bulbous head of the stud member), which socket ring is "made or formed of a single piece of metal, preferably sheet metal. This ring is split or cut from its outer to its inner diameter, as at a, so as to give or impart a yielding or spring action thereto. * * * This socket ring is provided with a tubular boss, B, which projects centrally from the rear side thereof, and this boss is provided with a longitudinal slot, b, which aligns, or coincides with the slit in the ring or annulus that divides the latter, thereby imparting or insuring a yielding action to both the boss and socket ring. * * *

The upper end of the split hollow cylinder is forced or pressed forward by a suitable implement within the inner diameter of the socket ring and caused to fit the same very closely and snugly. To secure the socket ring to the glove on one side of the usual slit therein, the tubular boss is first passed through the glove at a suitable point and then clinched or headed down on the same, thereby clamping the material to the head or flange formed by clinching one end of the boss and the socket ring." It is readily seen that this is nothing more nor less, in substance, than a complete vertically slitted eyelet, formed of the socket ring and tubular boss forced into the same, inserted into the fabric and clinched down on each side of same. Every time the "headed post" of this patent, the stud or real button member, is inserted or withdrawn into this expansible socket ring, or "button-catch" member, the fabric is correspondingly expanded, and, if resilient, it will also contract. In a little time, however, this repeated expansion of the fabric will leave the expansible socket loose in the fabric, when it will readily fall out. Hence a necessity for the apertured washer with the slitted eyelet seated in the aperture. Again, in this (the Mandrill) patent, the button-catch member shows on both sides of the fabric, and shows an opening of the size of the opening in the socket ring and also the flange thereof formed by the clinching process. It is self-evident that this does not anticipate the claim of the patent in suit now in question. Here we have the expansible eyelet (socket ring) within a central aperture of a washer which is attached upon one side of the fabric only and does not show at all on the other side, and the expansion and contraction of this button-catch member in no way affects the fabric to which the washer is attached. The same remarks apply to the Platt patent above referred to. Neither is an anticipation of the claim in suit.

Clearly the prior patent to Pringle, No. 429,177, of June 3, 1890, is not an anticipation. The improvement and the difference were pointed out by the examiners in the Patent Office in the language already quoted. It must be held that the claim in suit is for an operative device, and that it discloses novelty and utility, and was not anticipated. This court fully recognizes the authority of the cases cited to the effect that an invention is patentable only once, and that a patentee may have anticipated himself, and that limitations in a claim are binding on the patentee, and that the patentee is bound by either self-imposed limitations or those imposed as a condition of granting the patent. All this has become elementary in patent law. Clearly the invention was not abandoned. Through years the applicant clung to his claims and urged his application, with the consciousness of merit, perhaps, until finally successful in securing the allowance of a claim for what he had actually invented as an advance on the prior art. The fact that he met with opposition and rebuffs in the Patent Office does not argue that his alleged invention, when finally accurately defined, was without merit, but rather that great care and circumspection was used to guard against "double patenting" or the grant of a patent for a device without merit. The careful consideration given by the Patent Office gives strength to the presumption of validity.

143 F.—34

This brings us to the question of res adjudicata, or prior adjudication, which has been urged at great length and with apparent confidence. The bill alleges:

"(10) And your orator further shows on information and belief that the said defendant prior to the 4th day of August, 1903, had begun and continued his aforesaid unlawful infringing acts; that on or about the last-mentioned date your orator brought its bill in equity in this court against the aforesaid Andrew J. Bradley, complaining that the defendant had infringed and threatened further infringement of said letters patent 580,000, to which bill the said defendant filed his answer on or about the 5th day of October, 1903, and issue was joined by the filing of replication on or about the second day of November, 1903.

"(11) That thereafter, and on or about the 1st day of November, 1904, without then, or at any previous time having considered or passed upon the merits of the said cause, and no testimony having been taken in said cause, nor the issues therein nor any such issues, this honorable court, by a decree bearing the date last mentioned, dismissed the bill of complaint in the aforesaid cause upon the bill, answer, and replication therein, with costs, by an order in the following terms: 'This cause came on to be heard at this term; and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed that the bill of complaint herein be dismissed upon the bill, answer, and replication, with costs to be taxed.'"

The defendant fully pleads this as res adjudicata. On the trial, or during the taking of proof, it was stipulated:

"Fourth. That the garment fasteners manufactured by defendant and involved in this controversy are the same as those involved in a certain former suit between the same parties; that said former suit was filed in this court on or about the 4th day of August, 1903, and was determined by a decree on or about November 1, 1904, as set forth in the eleventh paragraph of the bill of complaint in the present suit; and that defendant has kept up, since the said decree of November 1, 1904, both before and after the bringing of the present suit, the same acts charged by complainant to be infringement of its rights, namely, the making and marketing of garment fasteners like complainant's Exhibits D and E herein.

"Fifth. That during the pendency of said former suit complainant was at liberty to take testimony for several months after the filing of replication in said former suit, but that complainant's failure to do so was in no wise due to lack of funds."

It is well settled that a decree or judgment in a suit between certain parties is a bar or estoppel to the prosecution of a second action upon the same claim or demand between the same parties, or their privies, if rendered upon the merits. If not rendered on the merits, it is no bar or estoppel. In such case such prior decree or judgment is a finality as to such claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. But the judgment or decree must have been rendered upon the merits. Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Hughes v. United States, 4 Wall. (U. S.) 232-237, 18 L. Ed. 303; Gould v. E. etc., R. R. Co., 91 U. S. 532, 533, 534, 23 L. Ed. 416; U. S. v. C. B. W. R. Co. (C. C.) 110 Fed. 864; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Clark v. Bernhard M. Co. (C. C.) 82 Fed. 339; Shaw v. Broadbent, 129 N. Y. 114-123, 29 N.

E. 238; Ward v. Boyce, 152 N. Y. 191, 201, 46 N. E. 180, 36 L. R. A. 549; Foye v. Patch, 132 Mass. 105–110. The rule is well stated in Hughes v. United States, 4 Wall., at page 237 (18 L. Ed. 303), where it is said:

"In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits."

In Shaw v. Broadbent, 129 N. Y., at page 123, and 29 N. E., at page 240, the court said:

"In order that a judgment should have the effect claimed, it is not enough that the party produces a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point," etc.

The complainant here expressly alleges that the decree entered in the former action between the parties was not entered upon the merits or after a trial or determination of the case on the merits, but in effect for neglect to prosecute and take evidence and present the case on the merits. This is, in effect, conceded by the defendant. The defendant now insists that the decree contains no reservation or statement that it is without prejudice to another action for the same cause. It is not necessary for this court to now determine whether the complainant would have been permitted to put in evidence aliunde to show that the decree in question was not rendered on the merits, if objection had been made that the decree was final and conclusive and could not be added to or in any way varied or impeached in this suit; that is, collaterally. No such objection was raised, and the allegation of the complaint was conceded to state the facts. The concession was not made subject to an objection that the evidence was incompetent and that the effect of the judgment or decree could not be varied, impaired, or impeached in this action. The former action is not a bar to this. It appears affirmatively that it was not dismissed on the merits.

We now come to the question of infringement. The alleged infringing device of the defendant is said to be made, and appears to be made, substantially in accordance with the claim and specifications of letters patent No. 735,655, dated August 4, 1903, and granted to Andrew J. Bradley. The specifications of that patent say:

"My invention relates to garment fasteners, and has for its principal object to simplify and cheapen the construction and manufacture of garment fasteners."

This patent has a single claim, which reads as follows:

"A two-piece socket member for a garment fastener, consisting of a continuous disk having its middle portion offset and an opening in said offset portion, the edge of said opening being turned back toward the plane of the disk, and a resilient split ring curled over the edge of said opening, whereby the edge of said opening limits the expansion of the ring and takes up strains in the plane of the ring, substantially as described."

This claim describes the socket member or button-catch member only, and in construction and operation it differs from the button or

stud-catch part of claim 1 of complainant's patent in two respects only. The socket member of the Bradley patent comprises a disk or plate which is the same in every respect as the washer of the complainant's patent, with the exception that the middle portion of this disk or washer is offset from the plane of the main portion of the disk; that is, it is curved upwardly. This disk of the Bradley patent, the washer of complainant's patent, has a central aperture. In complainant's patent the hole in the center of the washer or disk is called an aperture, while in the Bradley patent he says: "This middle offset portion has a hole in its center." About the outer edges of this disk or plate of the Bradley patent, washer of complainant's patent, Bradley has holes cut or punched through which to pass the needle and thread in sewing it to the garment. I have now described the only difference between the disk or plate of the Bradley patent and the washer of complainant's patent. There is no invention in these changes. To make them, if necessary or useful, would occur to any skilled mechanic. In fact, this court will take judicial notice of the fact that washers of this shape have been common and in use for various purposes for a quarter of a century. The same is true of the washer of complainant's patent. The specifications of the Bradley patent proceed to say:

"In this hole [speaking of the hole in the disk or plate] is arranged a split ring, 8, of resilient sheet metal. These two pieces—namely, the disk and the split ring—constitute the entire socket member."

That is, the socket member, or stud-catch member, or button-catch member, whatever we call it, consists of the disk, or, what is the same thing, the washer, and the split ring; the split ring of the Bradley patent being placed in the opening of the disk. As shown in the drawings and specifications of the Bradley patent, this split ring is nothing more nor less than the slitted eyelet of complainant's patent. The Bradley patent continues:

"In order to mount this ring, 8, in proper position, the edge of the opening in the offset portion. 6, of the disk, 5, is bent toward the plane of the disk. The main body of the split ring, 8, is in substantially the same plane as the disk, 5; but the inner edge of said ring is curled or bent outwardly and backwardly, so as to constitute a tubular thimble around the inclined inner edge of the opening, 7, in the offset portion. The ring is thus firmly mounted on the disk in position to allow it to enlarge and contract its opening. By reason of the manner in which the split ring is curled around the edge of the hole in the disk, the expansion of the ring is limited by its coming in contact with the edge of said opening, whereby the split. ring is protected against undue enlargement, and all strains in the direction of the plane of the disk are transferred from the ring to the disk itself. The normal size of the opening in the ring is slightly less than· the diameter of the head, 3, of the stud. The socket member is provided with holes, 1, 1, whereby it may be sewed on the garment. Aside from the hole, 7, for the split ring, and the holes, 1, 1, for the thread, the disk is continuous; that is, it has no radial slit therein."

By the words "the edge of the opening in the offset portion, 6, of the disk, 5," which edge is bent toward the plane of the disk, it is intended to say that that portion of the disk or plate around the central hole or opening therein is bent upwardly and backwardly toward the plane of the disk. This makes a flange, which is also found in complainant's patent and has already been described as forming a part

thereof when the washer is of thin metal. The curling or bending of the inner edge of the ring outwardly and backwardly is nothing more nor less than the bending outwardly and backwardly towards the plane of the washer of the upper and lower edges of an eyelet, when done by a proper instrument to fasten it in paper or other material. This split ring, when in position, is the slitted eyelet in position of the complainant's patent. This device described in the claim of the Bradley patent is the same as the device described in claim 1 of complainant's patent. Each consists of two elements, a washer, or disk, or plate, and a split ring, or slitted eyelet. In each case the disk, or plate, or washer has a central opening, and in this is fixed in each case the split ring or slitted eyelet, as the case may be. The differences are wholly in the shape of the washer or disk, and the fact that complainant's has no holes near the circumference of the washer. The operation of the two devices is the same. The Bradley patent speaks of and describes a stud member, and the specifications of the Bradley patent say:

"The stud member, A, being sewed on one portion of the garment, and the socket member, B, on another portion, are interlocked by merely pressing the stud-head, 3, into the opening of the split ring or thimble, 8. This opening is enlarged by the pressure sufficiently to let the head pass therethrough, whereupon the resiliency of said split ring or thimble contracts its opening and causes said ring or thimble to interlock with the head."

In short, when the bulbous head of the stud member has been pushed through the split ring seated in the opening of the disk, the split ring or slitted eyelet springs back into position and shuts down behind the head of the stud member. This is the interlocking described. In both the Bradley patent and the complainant's patent this stud-catch member, or socket member, for a garment fastener, consists of two portions, and both complainant's and defendant's may be attached to one flap of the garment on the proper side thereof by needle and thread, and will not show on the other side of this flap of the garment. Either can be attached to the garment by some other device, but such additional device is not necessary to make this stud-catch or button-catch member operative. The defendant's device copies in all material respects the complainant's device. There is a change of form, but not of principle, and the same means are used to accomplish the same purpose. We have the same elements in the same combination, used for the same purpose and producing the same result. The change in form given to the Bradley disk, or plate, or washer, does not differentiate it from the complainant's claim 1 of his patent, so as to avoid infringement. In point of fact the defendant and his experts substantially admit infringement.

The complainant is entitled to the usual decree for an injunction and an accounting.