READ MACH. CO. v. JABURG et al.

(District Court, S. D. New York.  February 27, 1915.)

1. PATENTS ⬡⇒328—INFRINGEMENT—CAKE-MIXING MACHINE.
    The Read patent, No. 966,765, for a cake-mixing machine, *held* infringed by a machine which, in place of the vertical screw of the patent, employs a different, but mechanically equivalent, device for adjusting the position of the bowl support.

2. PATENTS ⬡⇒22—INFRINGEMENT—MECHANICAL EQUIVALENTS.
    A patentee of a new machine or combination necessarily claims and secures a patent for every mechanical equivalent for that device or combination, and whether parts of two machines are mechanically equivalent is to be determined by their functions, and the principles of their construction and operation, and not by their form.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. ⬡⇒22.]

In Equity.  Suit by the Read Machinery Company against John Jaburg and Hugo Jaburg, copartners as Jaburg Bros.  On motion for supplemental injunction.  Granted.

See, also, 218 Fed. 989, 133 C. C. A. 672.

Edmund Wetmore and Oscar W. Jeffery, both of New York City, for complainant.

A. G. N. Vermilya, of New York City, for defendants.

HUNT, Circuit Judge.  [1] Defendants are now selling a machine in which, in place of a vertical screw for raising and lowering the bowl, there is a chain which is operated by a train of reducing gears and other mechanisms, some of which are not material to this present motion.  The invention patented being for a combination (whether of old or new elements is not now material) so arranged as to unite in producing a novel and useful result, it is the combination which will be protected, and the essential point is: Does the defendants' substituted mechanism for raising and lowering the bowl come within claims 6 and 10 of the Read patent?

Defendants' machine shows: (1) Means for changing the speed; (2) means for effecting the planetary motion of the beater; (3) means for adjusting the position of the bowl support with practically the same precision and facility of operation as the means for adjusting the bowl in the patent in suit.

Defendants urge that they should not be enjoined, because they have made a substantial change by using, instead of the vertical screw, which is one of the elements of the combination, a rack and pinion, which is not the equivalent of the vertical screw; and they point out that in the opinion of the court heretofore filed stress was laid upon the point that a vertical screw and a rack and pinion are not mechanical equivalents in the situation or environment used in the patent involved.  But it is fair to construe the language of the court used in the opinion as addressed to the particular device then in evidence, which showed a rack and pinion as testified to.  And now, on this motion, by a parity of reasoning, the court will look at the particular

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

device made by the defendants, to see whether or not it is the same thing as was before the court at the former hearing, and whether, with modifications and alterations, it is, as to the results accomplished, the substantial equivalent of the vertical screw. I do not understand that the court should limit the claims of the patent in suit with mathematical nicety to the precise means set forth in the claims, and deny plaintiff relief, if it is found that the defendants are using, not a screw, but, as a substitute therefor, a chain and a series of gears with a latch to lock them in position, if the result of such a ruling will be to enable defendants to keep the invention which the court has decreed belonged to the plaintiffs.

It is, of course, correct that one of the elements of the combination set forth in the sixth and tenth claims in suit is a vertical screw engaging the bowl support for adjusting the position thereof. The screw, as shown in the drawings and description of the patent, extends from the bottom to the top of the machine through the thread in the bowl support. By means of a hand wheel, with a handle attached, at the top of the machine, the screw is turned, and, engaging in the threads of the bowl support, moves the same up or down according to the direction in which the hand wheel is turned. In the Townsend patent, No. 989,733, Exhibit L, in the main suit, the vertical screw is carried, as in the patent in suit, to the top of the machine, where the hand wheel is located. In the machine which defendants are now putting out, the hand wheel is in the same position as in the old "Triumph" machine, which was before the court at the trial, and, as is shown in the drawing of the Lynn "Superior" machine, the hand wheel turned a shaft geared to the wheels, which imparted movement to the bowl support.

Professor Main, referring to drawings accompanying the affidavits for supplemental injunction, marked "Plaintiff's Exhibit A" and "Plaintiff's Exhibit B," describes the machine in this language:

"At the outer end of the shaft 64, upon which said sprocket is mounted, is a wheel with a handle. This handle is attached through a spring to a latch, which engages in any one of 24 slots in the periphery of the circular locking plate 72, so that when the handle is pulled away from the wheel the latch is removed, thereby enabling the operator to turn the wheel and revolve the shaft 64, whereby motion is communicated to the sprocket in a manner which I am about to describe, and when the handle is released the spring retracts and the latch falls into one of the 24 slots, thereby locking the shaft against movement. Power is communicated from the wheel to the sprocket as follows: When the handle is turned the shaft 64 is revolved, and, with it the gear 70, which turns the larger gear 69, which carries with it the smaller gear 67, which in turn meshes with a larger gear 66, which carries with it the sprocket 62, which in turn carries the chain, as above stated, all as described more in detail in Mr. Klein's affidavit. It is obvious that the purpose and result of interposing the gears 70, 69, 67, 66, and 62 between the hand wheel and the chain is to increase the power exerted and reduce the speed of movement of the bowl support, and at the same time, in connection with the said handle with its spring and the latch carried thereby, to enable the operator of the machine with one hand to obtain a minute vertical adjustment of the position of the bowl."

The adjustment that can be made is so perfect that it will obtain one twenty-fourth of a revolution of the hand wheel, and there is se-

cured vertical adjustment or movement of the bowl of approximately one-fiftieth of an inch, which effects the same minute adjustment and support of the bowl and contents as resulted from the screw adjustment used in the Read combination. Professor Main expresses the opinion that the adjustment is practically as accurate as that to be obtained by the screw device, and is therefore, for precision of adjustment and reliability of support, amply sufficient for the purposes of the operator. Again, in speaking of functional operation and the advantages of the operation of the mechanism now used by the defendants, he says that the more complicated device performs the same function as the screw of the plaintiff's patent:

"The speed-reducing gears in defendant's device enable the operator to obtain the slow, powerful movement which in the Read machine is obtained by means of the screw. The spring handle and latch serve to clamp the train of gears in position, thereby sustaining the weight of the bowl and contents, and all of this is effected by the operator using but one hand."

The predominating feature is that, by mechanism now adopted by the defendants, there is performed exactly the same function attained by the vertical screw, in that the bowl may be raised and lowered with one hand slowly, gradually, and automatically, holding the bowl in position. And this point particularly stands forth: That, when the operator removes his hand, automatically the bowl stops and remains where he leaves it, without requiring him to use a pawl or any other mechanism to hold it in place. It is true that Professor Main's testimony upon the original trial was accepted by me as explanatory of the mechanism of the device involved in the patent in suit and in other patents, for he made it clear that, in the rack and pinions to which he referred, as in the Chittenden patent, No. 890,604, for each entire revolution of the pinion the rack was shifted for a distance equivalent to the circumference of the pinion—usually several inches—and that a clamp or ratchet and pawl was required in connection with the rack and pinion to hold the rack and its attachments in a given place after the pinion had been revolved a certain distance. And he showed that the vertical screw was plainly much slower, more powerful, and far more accurate, not to mention the practical disadvantages accompanying the use of racks, pinions, levers, and like devices, in machines for mixing dough.

Equally clear does he now make it that the defendants' device under examination is not such a rack and pinion, but is one, no matter what it may be called, which is not subject to the objections described as inherent in the ordinary rack and pinion, but does include a movement which, for the special purposes of a machine of the type herein involved, becomes the mechanical equivalent of the vertical screw and hand wheel of the Read machine. The elimination of the disadvantages described as inherent in the use of racks and pinions and ratchets and pawls has apparently been accomplished by the mechanism of the defendants in their present machine. Furthermore, all the advantages of the bowl-raising mechanism used in the patented combination are to be found.

Defendants are not using the Chittenden device, inasmuch as their "sprocket and chain," or "rack and pinion," whichever may be re-

fined verbally, avoids the very disadvantages of the Chittenden rack and pinion by embodying the advantages and functions of the vertical screw. We then have a change in the element of the combination which is fairly to be regarded as the mechanical equivalent of the element of the patent. The substitution made by the defendants in their chain and reducing gears requires no alteration or modification in the rest of the machine, which in all other material respects is the same infringement.

Read was not limited to a screw by reason of his proceedings in the Patent Office. He not only never accepted the rack and pinion of the Chittenden patent as the equivalent of the screw he showed, but firmly asserted that it was not applicable to his device. Nor does there appear to be limitation upon the claims of Read, by which they would be denied the liberal range of equivalents to which the position of the patent in the art may entitle them.

[2] The doctrine of the courts is that:

"One who claims and secures a patent for a new machine or combination thereby necessarily claims and secures a patent for every mechanical equivalent for that device or combination, because within the meaning of the patent law every mechanical equivalent of a device is the same thing as the device itself."

In a learned opinion based upon the principle stated Judge Sanborn, in Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 652, 51 C. C. A. 362, wrote:

"In determining what is a mechanical equivalent of a given device, where, as in the case at bar, form is not the essence of the invention, forms and names are of little significance. The similarities and differences of machines * * * are to be determined by the offices or functions which they perform, by the principles upon which they are constructed, and by the modes which are used in their operation. A device which is constructed on the same principle, which has the same mode of operation, and which accomplishes the same result as another by the same or by equivalent mechanical means, is the same device, and a claim in a patent of one such device claims and secures the other."

It is not necessary that a function always be performed in identically the same way or to the same extent. Theoretically there may be a difference, but if, in the practical operation, the one machine performs to an appreciable extent the same function as the other, infringement may be claimed. Beach v. Inman (C. C.) 75 Fed. 840; Sly Manufacturing Co. v. Russell & Co., 189 Fed. 61, 110 C. C. A. 625.

My conclusion is that, on the proofs, defendants' new machine must be held to embody the patented invention, and defendants should be enjoined as prayed for. Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Hoyt v. Horne, 145 U. S. 308, 12 Sup. Ct. 922, 36 L. Ed. 713; Cimiotti Unhairing Co. v. American Unhairing Machine Co., 115 Fed. 498, 53 C. C. A. 230; Hutter v. De Q. Bottle Stopper Co. et al., 128 Fed. 284, 62 C. C. A. 652; Walker on Patents, p. 310.

The motion is granted.