## TRIANGLE KAPOK MACH. CORPORATION v. SOLINGER BEDDING SUPPLY CO. et al.

(District Court, S. D. New York. July 20, 1925.)

**1. Patents ⊕237.**

Device constructed on same principle, with same mode of operation, and accomplishing same result as another, by use of equivalent mechanical means, is same device, and claim in patent of one secures the other.

**2. Patents ⊕237.**

Neither joinder of two elements into one integral part, accomplishing purpose of both, nor separation of one integral part into two, doing what was done by single element, will evade charge of infringement.

**3. Patents ⊕236.**

Change of form, without change of function, does not escape infringement.

**4. Patents ⊕328.**

Sheldon patent, No. 1,027,570, for mattress-filling machine, claims 2, 5, *held* valid and infringed.

**5. Patents ⊕328.**

Contrado patent, No. 1,370,411, for mattress-filling machine, claims 1, 2, *held* valid and infringed.

In Equity. Patent infringement suit by the Triangle Kapok Machine Corporation against the Solinger Bedding Supply Company and another. Decree for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for plaintiff.

Trowbridge & Fox, of New York City (Daniel A. Rollins, of Boston, Mass., of counsel), for defendants.

WINSLOW, District Judge. This suit is for infringement of patent No. 1,027,570, issued May 28, 1912, on application filed February 9, 1911, to J. R. Sheldon, which, for convenience, will be referred to as the Sheldon patent; also patent No. 1,370,411, issued March 1, 1921, on application filed February 11, 1920, to Contrado and others. This will be referred to as the Contrado patent. The title to both of these patents is in the plaintiff corporation.

While the nominal defendants are Solinger Bedding Supply Company and I. Solinger, it appears in the record that the real defendant is Philip Baker, to whom patent No. 1,429,998 was issued September 26, 1922, on application filed March 8, 1922. All of the patents in question relate to a mattress-filling machine. The plaintiff contends that the defendants' structure, which is covered by the

Baker patent, is an infringement of the Sheldon and Contrado patents, the property of the plaintiff.

Considering the Sheldon patent, the inquiry as to the invention and alleged infringement is particularly directed to the provision of a damper, or gate, controllable at will by an operator, so as to permit the material, such as linters, cotton, kapok, feathers, down, etc., to freely circulate from a receptacle, through a pipe line, back into the receptacle, or, at the will of the operator, if otherwise desired, to flow directly to a nozzle adapted to be attached to the mattress, pillow, or comforter to be filled. In plaintiff's structure, the damper in one position closes the entry to the nozzle and opens the entry directly back into the receptacle. When in its other position, the damper closes the return entry to the receptacle and opens the entry to the discharge nozzle into the mattress.

The utility of the invention is admitted by defendants' witness, and is not here open to controversy. The defendants' structure accomplishes the same result, and, presumably, is equally meritorious.

The sole issue, to the mind of the court, is whether or not defendants' structure has a mechanical equivalent and is an infringement of the plaintiff's invention. The claims relied on by the plaintiff are 2 and 5, which read as follows:

"2. In a machine for filling comforters, a receptacle, a fan connected to said receptacle to withdraw the contents therefrom, a nozzle connected to said fan to receive said contents from said fan and deliver them, a return pipe connecting said nozzle with said receptacle, and a gate located and adapted to close said nozzle or said return pipe as set forth."

"5. A filling apparatus comprising a nozzle to deliver the filling to the comforter, a source of supply of filling material, means connected to said nozzle and adapted to withdraw the filling from said source of supply and deliver it to said nozzle, a return pipe connecting said nozzle with said source of supply, and a gate located and adapted to close said nozzle or said return pipe, as set forth."

An analysis of claim 2, and comparison, from plaintiff's viewpoint, of such analysis with the defendants' machine, is substantially as follows:

(1) A receptacle (see 5 of the Baker patent);

(2) A fan connected to the said receptacle to withdraw the contents therefrom (see 15 of the Baker patent);

(3) A nozzle connected to said fan to receive said contents from said fan and deliver them (see 24 of the Baker patent);

(4) A return pipe connecting said nozzle with said receptacle (see 21 of the Baker patent);

(5) And a gate located and adapted to close said nozzle or return pipe as set forth (equivalent of which is claimed to be 20 of the Baker patent).

On the other hand, it is contended by the defendants that the defendants' apparatus does not employ a return pipe, as appears in the plaintiff's structure, to return the filler, if the damper or pipe of plaintiff's structure closes the nozzle of the receptacle.

Referring to the plaintiff's two patents and defendants' patent, it is apparent that the function of the damper or gate in all of them is to permit the operator, at will, to close off either the return entry to the receptacle or to the nozzle discharging into the mattress or container.

In the Sheldon patent, the turning of the damper causes the filling material to flow into the return pipe, instead of out through the nozzle into the mattress. The same identical function is accomplished in the Baker patent by the damper or gate 20 in the Baker patent, so that by changing the damper or gate in the Baker patent from one position to the other, the pipe is at one moment a pipe for filling the mattress and again, upon the changing of the damper, becomes a return pipe directly to the receptacle. It is quite apparent that, if the gate or damper in the side of the supply pipe of the Baker patent opened into a separate pipe, there could be no dispute as to its identity of function with the plaintiff's return pipe. The fact that there are no guiding sides, or branch pipe, it seems to me, does not in any wise make them different instrumentalities. They are mechanical equivalents.

[1] "A device which is constructed on the same principle, which has the same mode of operation, and which accomplishes the same result as another, by the same or by equivalent mechanical means, is the same device, and a claim in a patent of one such device claims and secures the other." Kinloch Tel. Co. et al. v. Western Elec. Co., 113 F. 852, 51 C. C. A. 362. Read Machine Co. v. Jaburg et al. (D. C.) 221 F. 662, affirmed (C. C. A.) 223 F. 1022.

In the Baker patent, when the damper is in one position, it is a return pipe; when it is in another position, it is a discharge pipe; and, in like manner, when the damper of

Sheldon is in one position, the two pipes become one, and together constitute a return pipe. When the damper is in another position, one pipe alone is a discharge pipe; the remaining portion of the combination being eliminated and performing no useful purpose. The same results are obtained in each instance.

[2] "Neither the joinder of two elements into one integral part, accomplishing the purpose of both and no more, nor the separation of one integral part into two, together doing precisely or substantially what was done by the single element, will evade a charge of infringement." Barber v. Otis Motor Sales Co., 240 F. 723, 153 C. C. A. 521.

[3] A change of form, without change of function, does not escape infringement. In considering the Contrado patent, owned by plaintiff and also involved in this suit, the material difference from the Sheldon patent is the withdrawal of the filling material from the receptacle at the bottom of the receptacle, instead of at the top, as in the Sheldon patent. The Sheldon patent may be considered prior art with reference to the Contrado patent.

The claims relied on in the Contrado patent are 1 and 2, as follows:

"1. In a mattress-filling machine, the combination with a chamber open at its top, of a fan, a pipe, connecting the fan inlet to the lower end of said chamber, a delivery pipe connected to the fan discharge, said delivery pipe being branched and one branch leading into said chamber near its top and the other having provision for attaching a mattress thereto, and a gate to close either branch.

"2. In a mattress-filling machine, the combination with a chamber open at its top, of a fan, a pipe connecting the lower end of the chamber to the fan inlet, said pipe having a filling hopper communicating therewith, a closure for said hopper, a delivery pipe connected to the fan discharge, said delivery pipe being branched and one branch leading into the chamber near its top and the other having provision for attaching a mattress thereto, and a gate to close either branch."

Each of these claims, embracing the particular feature (withdrawal of material from the bottom of the receptacle) incorporated this distinguishing improved feature thereof, as admitted by defendants' expert witness. An analysis of claim 1 of the Contrado patent, from plaintiff's viewpoint, which is in accord with my conclusion, for the purpose of comparison with the Baker structure, shows that the same elements are present in the defendants' structure, and the same result is accomplished by mechanical equivalents, as follows:

(1) A chamber open at its top (see 5 of Baker patent);

(2) A fan (see 15 of Baker patent);

(3) A pipe connecting the fan inlet to the lower end of the chamber (see 16 of Baker patent);

(4) A delivery pipe connected to the fan discharge (see 17 of Baker patent);

(5) A delivery pipe being branched, and one branch leading into the chamber near its top (orifice 20 of Baker patent);

(6) And the other branched pipe having provision for attachment to a mattress or other container (see 24 of Baker patent);

(7) A gate or damper to close either branch as desired by the operator (see 21 of Baker patent).

The foregoing analysis could, with equal logic, be applied to claim 2. The Baker patent does not claim a return pipe, but it claims a branch. A branch pipe, obviously, is one that will permit two or more paths from a single path. In this particular art, that is the novel feature over the prior art in conjunction with the gate and its function when operated. The defendants' structure provides this novel feature, and plaintiff's patent in suit also demonstrates the same invention.

[4, 5] The record satisfies me that the Sheldon patent is an advance over the prior art. Its utility and commercial value are undisputed. The Contrado patent is an improvement over the Sheldon patent, and I therefore am of the opinion that both patents are valid, and that claims 2 and 5 of the Sheldon patent are infringed by the defendants' structure, and that claims 1 and 2 of the Contrado patent, also owned by the plaintiff, are in like manner infringed by the defendants' structure.

Decree for the plaintiff.