## PEREY v. PEREY MFG. CO. et al.

(District Court, E. D. New York. February 16, 1927.)

No. 2390.

1. Patents ☞287(6)—Holder of stock of infringing corporation held not chargeable with the infringement.

A corporation which holds the stock of a subway company, but does not operate its railway, *held* not chargeable with infringement of a patent because of the use of infringing devices in such operation.

2. Patents ☞165(1)—Patentee is entitled to every advantage inherent in invention whether aware of same or not.

A patentee is entitled to every advantage which is inherent in his invention and described in the patent, whether aware of same or not.

3. Patents ☞26(3)—New combination, producing new and useful result, is patentable.

A new combination of old elements, which produces a new and useful result, entitles the inventor to a patent.

4. Patents ☞328—Perey, 1,307,317, for turnstile, held not anticipated, valid, and infringed.

The Perey patent, No. 1,307,317, for turnstile, *held* not anticipated, valid, and infringed.

5. Patents ☞236(3)—Rearrangement of parts without change of function does not avoid infringement.

Infringement is not avoided by rearrangement of some of the parts of a patented machine without changing their functions.

In Equity. Suit by Frank J. Perey against The Perey Manufacturing Company and the Brooklyn-Manhattan Transit Corporation. Bill dismissed as to Transit Corporation, and decree for complainant against the other defendant.

Hauff & Warland, of New York City (William E. Warland, of New York City, of counsel), for plaintiff.

Walter H. Pumphrey, of New York City, for defendants.

CAMPBELL, District Judge. This is a suit in equity, in which the plaintiff seeks an injunction and damages against the defendants for the alleged infringement of patent No. 1,307,317. The answer is invalidity and noninfringement.

[1] Before proceeding to consider the question of validity or infringement, it may be as well to dispose of the question as to any possible liability of the defendant the Brooklyn-Manhattan Transit Corporation. As to this defendant, it conclusively appears that it is a business corporation, and holds the stock of companies operating railways, but does not operate the subways on the stations of which,

it is claimed, infringing turnstiles were being used. It further appears that said defendant never ordered or purchased, nor did it ever own or operate, any turnstiles.

That the letters "B. M. T." appear at the entrance of the subway stations where the alleged infringing turnstiles were located is not sufficient to charge the said defendant with liability, and no other facts appear in the evidence on which to base liability on the part of said defendant; therefore as to it the plaintiff has failed to show that said defendant would be liable for the alleged infringement. As to the defendant the Brooklyn-Manhattan Transit Corporation the complaint should be dismissed, but as both defendants appeared by the same attorney, and as all the evidence offered, except that of Frederick B. Stewart, was for the benefit of the defendant the Perey Manufacturing Company, Inc., such dismissal should be without costs.

The defendant the Brooklyn-Manhattan Transit Corporation having been eliminated, I shall in the further consideration of this suit designate the remaining defendant, the Perey Manufacturing Company, Inc., as the defendant.

Turnstiles, or as they are sometimes called passometers, were in use at the time of, and had been in use for many years before, the filing of the application for the patent in suit. The turnstiles then in common use were subject to many objections, among which were the following: The mechanism employed was comparatively intricate and complicated; the making of examination and repairs, in case of even a trifling breakdown, occasioned difficulty and a comparatively large loss of time, due to the peculiar arrangement and assembling of the mechanism, the greater portion of which was in the base of the pedestal, which was securely fastened to the floor; the necessity of the employment of a central vertical shaft to operatively connect the turnstile in the head with the mechanism in the base of the pedestal, which, because of its being required to be well mounted, caused considerable expense, and also because of its failure to rotate freely with little or no friction; and that because of the enlarged base of the pedestal it occupied too much space within the passageway controlled by the turnstile, and formed an obstruction over which people tripped, or with which they came into collision, in the rush to get through.

To overcome these objections was the problem which confronted the plaintiff, and his solution of the problem is found in the patent in suit. In the patent in suit there is

a case that forms the housing for the works, the turnstile arms carry or are carried by a head block, which has teeth for the detent mechanism, the studs for the retard mechanism, and the sockets for the bolt mechanism.

In the head block sockets are formed 90 degrees apart, arranged in line with the turnstile arms, and, to insure the stoppage of the arms with a quarter of a turn of the head of the stile, a spring-actuating heavy square bolt enters the socket when it comes in line with the bolt. The detent mechanism, comprising a ratchet, pawl, block, and spring, is merely to prevent a return movement of the arms and the head.

The retard mechanism, comprising a shoe, spring, recesses or pockets, and anti-friction rollers, is employed to resist the starting movement by a spring resistance, and complete the turning movement after about 45 degrees of movement of arms, and check such movement when the 90 degrees rotary movement has been accomplished. The locking bolt is a reciprocatory locking bolt, and the sockets are the ordinary bolt sockets found in any bolt construction.

There is pivoted above each notch a gravity shutter, shaped and arranged to normally close the notch, and, as one of the notches moves into line with the bolt, the shutter is carried upward by contact with the bolt, and the bolt actuated by a spring enters into engagement with the notch, and, aside from possible slight play, the head is positively held against movement in either direction. If this bolt is withdrawn from the socket, the shutter automatically swings back into position, closing the notch against the return of the bolt, and the machine cannot be locked until the next socket is in the opposite relation to this bolt.

In a locked machine, the effect of a violent blow delivered to any of the arms would be taken by the bolt, which would protect the detent and retard mechanism. In the machines in ordinary use at the time of the filing of the application of the patent in suit, where the traffic was heavy, the operator sometimes had trouble in accurately timing the release of the head of the turnstile to permit the passenger to pass through the stile, and sometimes, where the machine was worn, if the machine was not unlocked, the head and arms would rebound. These defects are not present with the positive locking bolt of the patent in suit.

[2] I am unable to agree with the defendant's contention that the form of locking bolt illustrated in the patent was an "accidental showing"; on the contrary, the specifications of the patent point out its importance and novelty, and even if, as defendant contends, plaintiff was not aware of all the benefits attained by the locking bolt, nevertheless he is entitled to every advantage which is inherent in and described in the patent. Lyon v. Boh (C. C. A.) 10 F.(2d) 30.

The defendant offered in evidence the file wrapper of the patent in suit and a number of patents to show the prior art, but it seems to be unnecessary to go into an extended consideration of all of them, because the defendant's expert, when asked which, in his opinion, was the closest reference, said: "I think the Brady patent is not only an approximation, but I think it is all of the patent."

The Brady patent, No. 417,141, dated December 10, 1889, is for the double arm type of turnstile, with a control upon one of the mechanisms only. These turnstiles are used in pairs, having a connecting mechanism underneath the floor, and the actuation of either turnstile will cause a similar actuation of the other. The controlling mechanisms of the Brady patent are all close to or underneath the floor of the passage between the turnstiles. Access to the works of the Brady patent is obtained through a hand hole, provided for that purpose in one side of the pedestal.

The Brady type was for years the standard of the control type of machines. The controlling mechanisms, the detent and retard mechanisms, are in the base. Four arms are shown at the top or head, which are connected to a rotary element, the central shaft. The central shaft has an enlarged element at the base, which carries a set of ratchet teeth on the periphery. Co-operating with this ratchet is a pawl, limiting motion in one direction only. In addition to the ratchet teeth on that enlarged portion, there are four cutaway portions or notches on the periphery, and co-operating therewith is a pawl pivoted so that it can be swung in and out over notches locking or unlocking it. The unlocking can be accomplished by pulling the pawl away from the notch with a string, spring, or other suitable mechanism. That pawl, being of a special escapement pawl type, has two members, and, when one is released, it will spring into position to prevent the other from returning.

The retard mechanism comprises a lever arrangement which co-operates with the small roller mechanisms, of which there are four. If the spring of the detent pawl in the Brady mechanism were broken, the turnstiles could be turned freely in the opposite direction.

[3] In none of the patents cited by the defendant can be found all of the elements of

the combination of the patent in suit, although some of the elements may be found in them. Even if all the elements were old, it would not invalidate the patent, because a new combination of elements, old in themselves, but which produce a new and useful result, entitle the inventor to the protection of a patent. Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034.

The defendant also offered in evidence, not as an anticipation, but merely to show the state of the art and limit the construction of the patent in suit, the machine Defendant's Exhibit A. This exhibit, if given all the weight to which it might be entitled under the most favorable circumstances, only shows some of the elements of the combination of the patent in suit, but not all of them. It has no locking bolt to hold the head against rotation in either direction. It has a spring-pressed pawl, and, if that spring breaks, the head will revolve in either direction. That exhibit does not limit the construction of the patent in suit in the manner contended by defendant.

I do not think this exhibit, even if it had any bearing on the controversy, was supported by the quality of evidence which should be required. The exhibit was new, and, even on the evidence offered on behalf of the defendant, was probably constructed within a year before the trial; therefore we have only oral testimony to show that such a machine was made before the application of the patent in suit was filed, and that character of evidence is not sufficient to prove anticipation or to limit the construction of a patent.

Patent No. 1,254,056, issued to John F. and H. Perey, is not prior art, because the application was not filed for four months after the application of the patent in suit, and cannot limit the construction of the patent in suit. It is worthy of note that Exhibit 4, the alleged infringing structure, is not made in accordance with the disclosure of such patent No. 1,254,056.

In offering the file wrapper of the patent in suit in evidence, the defendant attached thereto: United States patent No. 954,-132, to Gordon; United States patent No. 987,445, to Driver; United States patent No. 861,351, to Beerbower; United States patent No. 614,077, to Beatty; British patent No. 3,275, A. D. 1908, to Lee; and British Patent No. 4,752, A. D. 1906, to Ellison—and now claims that in so doing these patents were offered in evidence, although the United States patents to Gordon and Beatty and the British patents to Lee and Ellison were not among those on which defendant notified plaintiff it would rely.

In any event, it does not seem to me that defendant can gain any comfort from such patents, because they were all cited as references by the Patent Office, on the passage of the patent in suit through that office, and after a slight change of words, viz. substituting "adapted to automatically engage each successive notch" for "co-operating with the said notches," claim 1 of the patent in suit, on which this suit is based, was allowed over United States patent No. 861,351, to Beerbower, and British patent No. 4,752, A. D. 1906, to Ellison, cited as references on the first rejection, and this strengthens the presumption of validity. United States Fastener Co. v. Bradley (C. C.) 143 F. 523. Such patents do not limit the construction of such claim in the manner contended by the defendant.

The invention of the patent in suit does not consist alone of the difference between a bolt and a pawl, but, as described by plaintiff's expert, the invention is found, first, in a construction that permits all of the working mechanism to be brought in the head casing and close to the arm; second, a construction in the support for the arms which will give great strength and rigidity, all of the working mechanism going directly upon this head block; third, a positive locking mechanism, which will have enough strength to withstand the rough usage to which turnstiles in public places are subjected; and, fourth, the feature by which, when the locking mechanism is released, it cannot be reset until the turnstile has been actuated.

[4] There are seven claims in the patent in suit, but only claim 1 forms the basis of this suit, and reads as follows:

"1. A turnstile comprising a single rotatable member, having the arms of the turnstile fixed to its upper end and provided with locking notches corresponding in number and spacing with the said arms, a spring actuating locking bolt adapted to automatically engage each successive notch, means for disengaging the bolt to free the rotating member, and an automatic check on the return of the locking bolt coacting to prevent re-engagement until the turnstile has performed a complete operation."

A consideration of the prior art shows that some of the elements of this claim are old, but the said claim is in no sense a mere aggregation, because, so far as the record shows, the turnstile of the patent in suit was the first to have a compact, solid head, carrying the arms, having the retard mechanism,

the detent mechanism, and the solid locking bolt all acting upon one solid head, and the shutter or flap acting to automatically prevent a return movement of the bolt after its release: The patent is valid.

The defendant admits having made and sold machines substantially in accordance with Plaintiff's Exhibit 4. All of the parts of the patent in suit are found in Plaintiff's Exhibit 4, and have the same functions, as appears from the colored diagrams made by the plaintiff's expert and received in evidence, but there has been somewhat of a rearrangement of the parts.

The locking bolt in the patent in suit has movement in a horizontal plane, and the detent movement in a vertical plane. This is reversed in Plaintiff's Exhibit 4, in which the locking bolt has movement in a vertical plane, and the detent movement in a horizontal plane.

In the patent in suit the retard mechanism acts upon studs at the top of the head; in Plaintiff's Exhibit 4 it acts upon studs at the bottom of the head. The location of the parts has simply been changed, but the various sockets, teeth, and rollers are all carried by the head block, and the other mechanism acts directly upon the head block close to the arm.

In the patent in suit the flap interposed between the head and the bolt, to prevent the return to the socket of the bolt when withdrawn, is attached to the head; in Exhibit 4 the flap is attached to the bolt itself, spring-pressed, and engages the head when the bolt is withdrawn, preventing the return of the bolt. In both the patent in suit and Exhibit 4 the bolt is spring-pressed, and is permitted to enter the next socket, by the flap being made inoperative after the completion of 90 degrees of movement of the head. The defendant in Exhibit 4 has thus taken all of the invention of the patent in suit.

[5] While there has been a rearrangement of some of the parts, all of the parts of the patent in suit are found in Exhibit 4, performing the same functions, in substantially the same way, and accomplishing the same result. Infringement is not escaped by a change of form without change of function. Machine Company v. Murphy, 97 U. S. 120, 24 L. Ed. 935; James L. Taylor Mfg. Co. v. Steuernagel (D. C.) 294 F. 362; Triangle Kapok Mach. Corp. v. Solinger Bedding Supply Co. (D. C.) 13 F.(2d) 494.

The patent in suit is not a pioneer patent, but is one for a useful and relatively important invention, marking a distinct advance in the art, and while its range of equivalents should only be wide enough to protect the invention of the patent in suit (Paper Bag Patent Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122), such range is wide enough to include as equivalents the rearranged parts, if such parts be not the same as those of the patent in suit, performing the same functions.

What the defendant really thinks of the patent in suit is better expressed in its acts than in its words, because, notwithstanding its denial of invention in the patent in suit, and praise of the prior art in general, and the Brady patent in particular, and the fact that a later patent was issued to John F. Perey and his father, the defendant gives the sincerest form of flattery, imitation, to the patent in suit, by failing to avail itself of the prior art and said Perey patent, and by following the teaching of the patent in suit in the construction of Exhibit 4. The defendant has infringed.

The patent in suit having been found to be valid and infringed by the defendant the Perey Manufacturing Company, Inc., the plaintiff may have a decree against said defendant, as prayed for in the bill of complaint, with costs and the usual order of reference. Settle decree on notice.