INTERSTATE COMMERCE COMMISSION *v.* STICKNEY AND OTHERS, RECEIVERS OF THE CHICAGO GREAT WESTERN RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 251. Argued October 12, 1909.—Decided November 29, 1909.

A carrier may charge and receive compensation for services that it may render, or procure to be rendered, off its own line, or outside of the mere transportation thereover.

Where the terminal charge is reasonable it cannot be condemned, or the carrier charging it required to change it because prior charges of connecting carriers make the total rate unreasonable.

In determining whether the charge of a terminal company is or is not reasonable the fact that connecting carriers own the stock of the terminal company is immaterial, nor does that fact make the lines of the terminal company part of the lines or property of such connecting carriers.

The inquiry authorized by § 15 of the Hepburn Act of June 29, 1906, c. 3591, 34 Stat. 584, relates to all charges made by the carrier; and, on such an inquiry, the carrier is entitled to have a finding that a particular charge is unreasonable before he is required to change it.

Where the charge of a terminal company is in itself reasonable the wrong of a shipper by excessive aggregate charges should be corrected by proceedings against the connecting carrier guilty of the wrong.

The convenience of the commission or the court is not the measure of justice, and will not justify striking down a terminal charge when the real overcharge is the fault of a prior carrier.

164 Fed. Rep. 638, affirmed.

On December 10, 1907, the Interstate Commerce Commission entered an order requiring certain railroads running into Chicago to cease and desist from making a terminal charge of two dollars per car for the transportation of live stock beyond the tracks of said railroads in Chicago, and for delivery thereof at the Union Stock Yards, and requiring them to establish and put in force for said services a charge of one dollar per car. Compliance with this order was postponed by the commission until May 15, 1908.   On May 7, 1908, the appellees filed this bill in the Circuit Court of the United States for the District of Minnesota, to restrain the enforcement of said order, averring that the actual cost to them for such terminal services exceeded in each instance the sum of two dollars per car, and that the companies were making delivery at a charge less than such actual cost; that therefore the reduction of the charge by the commission to one dollar per car was unreasonable, oppressive and unlawful.   A hearing was had before three judges of the Eighth Circuit and a restraining order entered as prayed for by the railroad companies, from which order an appeal was taken to this court.

*Mr. Wade H. Ellis,* Assistant to the Attorney General, and *Mr. S. H. Cowan,* special attorney, for the appellant:

For the history of this controversy before the courts and the commission see *Keenan* v. *Atchison & C. R. R. Co.,* 64 Fed. Rep. 992; *Walker* v. *Keenan,* 73 Fed. Rep. 755; Reports, 7 I. C. C. 513, and 555*a; Int. Com. Comm.* v. *C., B. & Q. R. R. Co.,* 98 Fed. Rep. 173; *S. C.,* 103 Fed. Rep. 249; *S. C.,* 186 U. S. 320; *Cattle Raisers' Assn.* v. *C., B. & Q. R. R. Co.,* 10 I. C. C. 83, and 11 I. C. C. 296; *Commodity Rates St. Louis to Texas Points,* 11 I. C. C. 238; *Cattle Raisers' Assn.* v. *C., B. & Q. R. R. Co.,* 12 I. C. C. 507; and this case below, 164 Fed. Rep. 638.

This case is even stronger for the commission than that in which the terminal charge was condemned in 186 U. S. 320. The power of the commission to make orders such as the one in-

volved is legislative and an order should not be set aside by
the courts unless it violates property rights guaranteed by the
Constitution. *Maximum Rate Cases,* 167 U. S. 479; *Reagan* v.
*Farmers' L. & T. Co.,* 154 U. S. 362; *Knoxville* v. *Water Co.,*
212 U. S. 1; *Willcox* v. *Consol. Gas Co.,* 212 U. S. 19; *Prentis* v.
*Atlantic Coast Line,* 211 U. S. 210; *Home Telephone Co.* v.
*Los Angeles,* 211 U. S. 265; *Honolulu Transit Co.* v. *Hawaii,*
211 U. S. 282.

Under the old law the function of the Interstate Commerce
Commission was in its nature judicial. It passed upon the
reasonableness of existing rates and the courts reviewed its
conclusions just as they review those of an inferior judicial
tribunal, treating the commission as a referee of the Circuit
Courts of the United States. See 37 Fed. Rep. 614; *New Or-
leans & Texas Pacific Ry.* v. *The Interstate Commerce Commis-
sion,* 162 U. S. 184; *Maximum Rate Cases,* 167 U. S. 479. Under
the act as now amended the commission fixes the rate and the
courts have the same authority to review that they would if
the rate had been fixed by Congress itself. The so-called
"Court Review" amendment, which is embodied in the Hep-
burn Act, is merely declaratory. The only thing added is the
venue and the express authorization of suits against the com-
mission as a representative of the Government.

It is not the reasonableness of the rate which is now before
the court; that question is submitted exclusively to the com-
mission. The rate fixed by the commission may in the judg-
ment of the court be unreasonable and yet it will not be de-
clared unlawful unless it is so unreasonable as to constitute a
confiscation of property. *Knoxville* v. *Water Co.,* 212 U. S. 1;
*San Diego Land & Town Co.* v. *National City,* 174 U. S. 739, 754.

The commission did not err in considering the terminal
charge and the through rates together. That was settled in the
*C., B. & Q. Case,* 186 U. S. 320, and there has been no change
since then. The sole result of the terminal charge is to in-
crease the cost to the shipper for the same service. Nor did
the Hepburn Act since passed alter the situation. In neither

case has there been an obligation to make a terminal charge. The railroads have created the Union Stock Yards and made it their depot and the only available place for delivery of live stock in Chicago. It is the greatest live stock market in America and the other depots they have established are paper depots and no real terminal service exists. It is a pretense for the terminal charge. *Covington Stock Yards* v. *Keith,* 139 U. S. 128. No charge above one dollar per car is justifiable. Putting the two dollars terminal charge on at Chicago and not at other points made an unjust discrimination against Chicago and is not justifiable.

The order does not violate constitutional rights even if one dollar is less than the cost of terminal service.

The rule adopted below is that where railroad companies publish a terminal charge for terminal service, and the commission is called upon to declare whether or not it is reasonable, the commission must, as a matter of law, determine this question solely by the cost of the terminal service, independent of the fact that the through rate already includes compensation for the terminal service and independent of the fact that the transaction as a whole is profitable to the roads.

This is not sustained by reason or authority. To uphold it is to say that the railroads can charge twice for the same service, and the commission is without power to strike off the charge which is last put on. Even if the railroads had in this case, actually and in good faith, separated the terminal service from the through service, and the terminal charge from the through charge, the commission could reduce the terminal charge if they found that the through charge was high enough to include it.

But the railroads have not separated these two services and charges. They cannot separate the services because a shipment of live stock from the point of origin to the Union Stock Yards is one transaction and inseparable.

If a carrier adds a charge for a pretended separate service, which is already included in another service for which he is

amply paid, the commission may reduce the extra charge, even to a point below the cost of the pretended separate service. *Southern Railroad Co.* v. *The St. Louis Hay & Grain Co.,* 214 U. S. 297, distinguished.

The cost of a particular service is not a proper test of the reasonableness of the charge for it when the service performed is part of a larger transaction. *Minn. & St. Paul R. R.* v. *Minnesota,* 186 U. S. 257, 267; *St. Louis & S. F. R. R. Co.* v. *Gill,* 156 U. S. 649. See also *Atlantic Coast Line R. R. Co.* v. *N. C. Corp. Com.,* 260 U. S. 1; *Cov. & Lex. Turnpike Co.* v. *Sanford,* 164 U. S. 596; *A. & V. R. R. Co.* v. *Railroad Com. of Miss.,* 203 U. S. 496; *Railroad Co.* v. *Well & Neville,* 96 Texas, 408.

In the present case, even if one dollar per car be below the cost of the particular service, the railroads cannot complain, since the whole charge for the whole service is admittedly profitable.

It is not shown that the commission's allowed charge of one dollar per car is less than cost of terminal service. The commission's order applies only to whole transaction from point of origin and as so considered the charge is not below cost.

Every intendment of law and fact should avail to support the order of the commission.

When questions of fact are submitted to executive or administrative officers of the Government their conclusions are final. When questions so submitted involve both fact and law the conclusion will not ordinarily be disturbed by the courts. Even when a question of law only is submitted to other departments the courts will make every presumption in favor of the interpretation reached. *Bates & Guild Co.* v. *Payne,* 194 U. S. 106; *Marquez* v. *Frisbie,* 101 U. S. 473.

*Mr. William D. McHugh* and *Mr. Walker D. Hines* for appellee:

The railroad companies have divided their said rates and

have made a distinct charge for transportation from the points of shipment to Chicago, and a separate terminal charge for delivery to the stock yards, a point beyond the lines of the respective carriers.

The separate terminal charge of two dollars per car made by the railroad companies for the delivery by them of live stock to the stock yards, a point beyond the lines of their respective railroads, is not excessive since it is less than the actual cost to the railroads for the performance of such service.

Each appellee had the right to divide the charge for transportation so as to have one rate from point of shipment to a point on its tracks in Chicago, and a separate charge thence to the stock yards. *Walker* v. *Keenan,* 73 Fed. Rep. 755; *S. C.,* 7 I. C. C. Rep. 548; § 6 of the Act to Regulate Commerce; *Interstate Comm. Comm.* v. *C., B. & Q. R. R. Co.,* 186 U. S. 320, 335.

The commission's order is contrary to the Constitution. Amendment V, and see as to right of carrier to compensation for additional service, *So. Ry. Co.* v. *St. Louis Hay Co.,* 214 U. S. 297, 301.

There is no authority for, nor do cases cited by appellant sustain proposition that in order to set aside a rate prescribed by the commission, the carrier must show confiscation as to all its business.

The commission's order was made under clear error of law.

The courts have power to set aside any order of the commission not conforming to the statute. As to the power conferred on the commission by the statute, see Vol. 2, Hearings Before Senate Interstate Commerce Committee, pp. 1662–1674. The power of the court to review on mixed questions of law and fact, or of law alone, may be exercised without regard as to whether a constitutional right has been violated.

Judicial intervention is expressly contemplated by the act itself and in this case is especially appropriate because the regulation is of vested rights and not of matters wholly under power of Government. The right of owners of railroads to

adequate protection exists independently of consent of the Government.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The controversy as to this terminal charge has been of long duration. A history of it antecedent to the present litigation is to be found in *Interstate Commerce Commission* v. *C., B. & Q. R. R. Company*, 186 U. S. 320.

It is well to understand the precise question which is presented in this case. That question is the validity of the terminal charge of two dollars per car. The report of the commission opens with this statement: "The subject of this complaint is the so-called terminal charge of $2 per car imposed by the defendants for the delivery of carloads of live stock at the Union Stock Yards in Chicago," and its order was in terms that the railroad companies be—

"required to cease and desist on or before the 1st day of February, 1908, from exacting for the delivery of live stock at the Union Stock Yards, in Chicago, Ill., with respect to shipments of live stock transported by them from points outside of that State, their present terminal charge of $2 per car.

"It is further ordered that said defendants be, and they are hereby notified and required to establish and put in force on or before the 1st day of February, 1908, and apply thereafter during a period of not less than two years, for the delivery of live stock at the Union Stock Yards, in said Chicago, with respect to shipments of live stock transported by them from points outside the State of Illinois, a terminal charge which shall not exceed $1 per car, if any terminal charge is maintained by them."

The sixth section of the act known as the "Hepburn Act," (an act to amend the Interstate Commerce Act, passed on June 29, 1906, c. 3591, 34 Stat. 584), requires carriers to file with the commission and print and keep open to inspection

schedules showing, among other things, "separately all terminal charges . . . and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates." By § 15 the commission is authorized and required, upon a complaint, to inquire and determine what would be a just and reasonable rate or rates, charge or charges. This, of course, includes all charges, and the carrier is entitled to have a finding that any particular charge is unreasonable and unjust before it is required to change such charge. For services that it may render or procure to be rendered off its own line, or outside the mere matter of transportation over its line, it may charge and receive compensation. *Southern Railway Co.* v. *St. Louis Hay Co.*, 214 U. S. 297. If the terminal charge be in and of itself just and reasonable it cannot be condemned or the carrier required to change it on the ground that it, taken with prior charges of transportation over the lines of the carrier or of connecting carriers, makes the total charge to the shipper unreasonable. That which must be corrected and condemned is not the just and reasonable terminal charge, but those prior charges which must of themselves be unreasonable in order to make the aggregate of the charge from the point of shipment to that of delivery unreasonable and unjust. In order to avail itself of the benefit of this rule the carrier must separately state its terminal or other special charge complained of, for if many matters are lumped in a single charge it is impossible for either shipper or commission to determine how much of the lump charge is for the terminal or special services. The carrier is under no obligations to charge for terminal services. Business interests may justify it in waiving any such charge, and it will be considered to have waived it unless it makes plain to both shipper and commission that it is insisting upon it. In the case in 186 U. S. *supra*, we sustained the decree of the lower court, restraining the reduction of the terminal charge from $2 to $1 as to all stock shipped to Chicago, although the commission had stated that there had been a reduction of the through rate

from certain points by from $10 to $15, in reference to which
reduction and its effect upon the order of the commission we
said, speaking by Mr. Justice White, after quoting from the
report of the commission (pp. 338, 339):

"In other words, it was held that the rate, which was un-
just and unreasonable solely because of the $1 excess, con-
tinued to be unjust and unreasonable after this rate had been
reduced by from ten to fifteen dollars. This was based, not
upon a finding of fact—as of course it could not have been so
based—but rested alone on the ruling by the commission that
it could not consider the reduction in the through rate, but
must confine its attention to the $2 terminal rate, since that
alone was the subject-matter of the complaint. But, as we
have previously shown, the commission, in considering the
terminal rate, had expressly found that it was less than the
cost of service, and was therefore intrinsically just and reason-
able, and could only be treated as unjust and unreasonable by
considering 'the circumstances of the case;' that is, the
through rate and the fact that a terminal charge was included
in it, which, when added to the $2 charge, caused the terminal
charge as a whole to be unreasonable. Having therefore de-
cided that the $2 terminal charge could only be held to be
unjust and unreasonable by combining it with the charge em-
braced in the through rate, necessarily the through rate was
entitled to be taken into consideration if the previous con-
clusions of the commission were well founded. It cannot be
in reason said that the inherent reasonableness of the terminal
rate, separately considered, is irrelevant because its reason-
ableness is to be determined by considering the through rate
and the terminal charge contained in it, and yet when the
reasonableness of the rate is demonstrated, by considering the
through rate as reduced, it be then held that the through rate
should not be considered. In other words, two absolutely con-
flicting propositions cannot at the same time be adopted. As
the finding was that both the terminal charge of $2 and the
through rate as reduced when separately considered were

just and reasonable, and as the further finding was that as a consequence of the reduction of from ten to fifteen dollars per car, the rates, considered together, were just and reasonable, it follows that there can be no possible view of the case by which the conclusion that the rates were unjust and unreasonable can be sustained."

The tariff schedules of the appellees make clear the separate terminal charge for delivery from their own lines to the Union Stock Yards. We quote the schedule of the Chicago and Northwestern Railroad Company:

"The live stock station and stock yards of this company in Chicago are located at Mayfair, and the rates named herein apply only to live stock intended for delivery at, or received and transported from the stock yards of the company at Mayfair, in Chicago.

"Upon all live stock consigned to or from the Union Stock Yards in Chicago, or industries located on the Union Stock Yards Railway or the Indiana State Line Railway, and transported and delivered to or received and transported from said Union Stock Yards or said industries located on said Union Stock Yards Railway, or the Indiana State Line Railway, aforesaid, a charge of two dollars ($2.00) per car will be made for the special and separate service of transporting such cars to said Union Stock Yards, or to said industries on said Union Stock Yards Railway, or the Indiana State Line Railway, from this company's own rails, or of transporting such cars from said Union Stock Yards, or said industries on said Union Stock Yards Railway, or the Indiana State Line Railway, to this company's own rails."

The others are equally specific. In some of them, as in those of the Atchison, Topeka and Santa Fe Railway Company, it is provided:

"The attention of the shipper must be and is called to the fact that the transportation charge on live stock delivered at our own yards at Corwith in Chicago will be two dollars ($2.00) per car less than when delivered at the Union Stock Yards

at Chicago, or at industries located on the Union Stock Yards Railway or the Indiana State Line Railway, and the agent should ascertain definitely at which point the shipper desires delivery to be made. The live stock contract must then be filled out so as to show the correct destination and rate as provided by the tariff and amendments."

Further, it is shown by the affidavits that the amount of such terminal charge is not entered upon the general freight charges of the companies, but is kept as a separate item. The Union Stock Yards Company is an independent corporation and the fact, if it be a fact, that most or even all of its stock is owned by the several railroad companies entering into Chicago does not make its lines or property part of the lines or property of the separate railroad companies.

With reference to the reasonableness of the terminal charge, it was stipulated on the hearing before the Interstate Commerce Commission that all the testimony taken in the former proceedings might be considered. It also appears that additional testimony was there offered. None of this testimony has been printed in the record presented to us. We have, however, our former decision as well as the report of the commission on the recent hearing, and also the affidavits filed on this application, and can consider them. It appears from the former case that, after some discussion, when testimony was being offered on the question of reasonableness, the commission suggested that it was probably unnecessary to offer further evidence, and said (186 U. S. 327):

"'To remove all doubt upon that subject, however, if it is not clearly found, we now find that, looking entirely to the cost of service, and including as a part of that cost the trackage charge paid the Union Stock Yards and Transit Company and the unloading charge paid that same company, the amount of this terminal, if, under the circumstances of this case, it is proper to impose the charge is reasonable. If any modification of the present findings is necessary, they are hereby modified to that extent.'"

And in the excerpt put into the margin in the opinion of this court is a statement of the actual and estimated expense to the different railroads for making such delivery, which makes it quite clear that the charge was a reasonable one. This finding as to the reasonableness of the charge was repeated again by the commission.

In its report in the present case it said:

"The original case did not show the cost of making delivery of other kinds of carload freight at this market, but the present record shows that the average cost to one defendant, the Atchison, Topeka and Santa Fe Railway Company, of delivering all kinds of carload freight, including live stock, is $5.40 per car, while the cost of delivering live stock is not far from $2 per car. The testimony further indicates that the average cost of delivering all kinds of carload freight does not differ much in the case of the Santa Fe from that in the case of the other defendants, although it does not appear that several of the defendants are at greater expense than $2 per car in making delivery of live stock at the stock yards. We think it fairly appears upon this record that the total cost to these defendants of delivering live stock at the Union Stock Yards, including the trackage charge, is not much, if any, above one-half the average cost of handling all carload freight in the city of Chicago."

Under those circumstances it seems impossible to avoid the conclusion that, considered of and by itself, the terminal charge of two dollars a car was reasonable. If any shipper is wronged by the aggregate charge from the place of shipment to the Union Stock Yards it would seem necessarily to follow that the wrong was done in the prior charges for transportation, and, as we have already stated, should be corrected by proper proceedings against the companies guilty of that wrong, otherwise injustice will be done. If this charge, reasonable in itself, be reduced the Union Stock Yards Company will suffer loss while the real wrongdoers will escape. It may be that it is more convenient for the commission to strike at the terminal

charge, but the convenience of commission or court is not the measure of justice.

We are unable to find any error in the conclusions of the trial judges, and their order is, therefore,

*Affirmed.*