PONTIAC, OXFORD & NORTHERN RAILROAD CO. v.
MICHIGAN RAILROAD COMMISSION.

1. CARRIERS—SWITCHING CHARGES—FREIGHT RATES.

Where the relation of railroads is one of co-operation merely, they are entitled to have sustained a joint rate and a reasonable charge for switching service.

2. SAME—ORDERS OF MICHIGAN RAILROAD COMMISSION.

The corporate organization and affairs of the Pontiac, Oxford & Northern Railroad Company being controlled by the Grand Trunk Western Railway Company, although the independent organization of the first named road was maintained, they must be regarded as identical for the purpose of rate making, so that switching charges between them were properly eliminated by order of the Michigan railroad commission.[1]

Appeal from Ingham; Collingwood, J. Submitted

---

[1] See note in L. R. A. 1918A, 164.

October 11, 1917.   (Docket No. 5.)   Decided September 28, 1918.

Bill by the Pontiac, Oxford & Northern Railroad Company and others against the Michigan railroad commission and J. T. Wylie & Company and others, interveners, to review an order establishing freight rates.   From a decree dismissing the bill, plaintiffs appeal.   Affirmed.

*L. C. Stanley* (*Geer, Williams & Martin,* of counsel), for plaintiffs.

*Alex. J. Groesbeck,* Attorney General (*David H. Crowley,* of counsel), for defendant commission.

BIRD, J.   J. T. Wylie & Company, manufacturers of certain forest products, together with other companies similarly engaged, filed their petition with the Michigan railroad commission complaining of certain tariff rates on such products in force on the several lines of railway in Michigan which go to make up what is known as the Grand Trunk Railway System, and praying for a reduction thereof.   A hearing followed, testimony was taken and a conclusion reached by the commission that the rates complained of were too high, unreasonable and out of proportion to the rates charged by other railroads for similar service, and a reduction of the line rate was ordered and switching charges as between themselves were altogether eliminated.

Conceiving themselves aggrieved at the order of the commission they filed a bill in equity to review it. On review in this court the contentions of plaintiff have been narrowed to the following:

(1) The Pontiac, Oxford & Northern is a separate and distinct railroad company for the purpose of rate making, notwithstanding the fact that its stock is substantially all owned by or held in trust for the Grand

Trunk Western; it is proper for the plaintiff and appellant to treat the former company as not a part of the Grand Trunk Railway System, but whether it is so treated or not is immaterial for rate making purposes, that system being merely a trade-name for certain railroad companies having interests more or less in common.

(2) The switching charges scheduled in the tariffs of the Pontiac, Oxford & Northern and the Grand Trunk Western as between their respective roads are proper and legal, and it was beyond the power of the Michigan railroad commission to order the elimination of such charges.

Plaintiff contends that the provision of the Michigan railroad commission's order that the Pontiac, Oxford & Northern and the Grand Trunk Western eliminate all switching charges between themselves, was and is legally unwarranted, wholly beyond any power vested in the commission, and that it is unjust, unreasonable and confiscatory as requiring said railroad companies to perform switching services wholly without remuneration. Further that the commission considered the aggregate sum of the line rate and the switching charges, whereas it should have considered these items separately.

Defendant meets this contention by the claim that the stock of the Pontiac, Oxford & Northern Railroad Company is owned by the Grand Trunk Western Railway Company and is operated and controlled by it and for the purpose of rate making it should be considered a part of the Grand Trunk Western.

1. If plaintiffs are right in their contention that the relations of the Pontiac, Oxford & Northern and the Grand Trunk Western Railway Company are one of co-operation merely, they are entitled to have sustained a joint rate and a reasonable charge for switching service. On the other hand, if defendant's con-

tention is the proper one, neither road would be entitled to make a charge for switching services, and the order of the commission should be affirmed.

In order to determine which contention should prevail it will be necessary to consider at some length what the relations are between the Grand Trunk Western and the Pontiac, Oxford & Northern.

It appears from the record that the Grand Trunk Railway Company of Canada has secured control of several Michigan railroads and operates them in connection with its own under the trade-name of the "Grand Trunk Railway System." Both the Grand Trunk Western and the Pontiac, Oxford & Northern, the railroads directly involved in this controversy, are a part of that system. The Pontiac, Oxford & Northern is a railway wholly within the State of Michigan extending from the city of Pontiac to Caseville, something over 100 miles. It connects and exchanges traffic with the Grand Trunk Western at Imlay City and with the Detroit, Grand Haven & Milwaukee, another line controlled by the Grand Trunk, at Pontiac. In 1909, the entire capital stock of the Pontiac, Oxford & Northern was purchased by the Grand Trunk Western, and immediately thereafter announcement was made of the purchase by Mr. Chas. M. Hayes, president of all railroads constituting the Grand Trunk System. The announcement was in the following form:

"Grand Trunk Railway System,

"Grand Trunk Western Railway:

"Detroit, Michigan, December 1, 1909.

"The Pontiac, Oxford & Northern Railroad has passed under the control of this company. The jurisdiction of all officers of the respective departments of this company is hereby extended to that railway, effective December 1, 1909.

"Chas. M. Hayes,
"President."

Since that date the Pontiac, Oxford & Northern has been operated as a part of the Grand Trunk Railway System. The general officers of the Grand Trunk Western have been the general officers of the Pontiac, Oxford & Northern. The officers of the Grand Trunk Railway Company of Canada have looked after and paid its taxes, done its financing and absorbed its losses or deficits, and the road has been treated in the same way that it would have been had the Grand Trunk Western owned its assets. At the hearing Mr. George W. Alexander, secretary of the Pontiac, Oxford & Northern and the Grand Trunk Western, testified, upon cross-examination, as follows:

"*Q.* As a matter of fact, inasmuch as it is a losing proposition that the Grand Trunk has, because of its general interest, assumed the losses, the proposition of having independent existence is merely a matter of bookkeeping, isn't it?

"*A.* It is run in the same way as it would if owned by the Grand Trunk Western, the losses that accrue they pay. They assumed the bonds and to keep it away from the bond holders they have to pay its debts.

"*Q.* It comes down merely to the proposition of difference in bookkeeping?

"*A.* The result would be the same."

The Pontiac, Oxford & Northern Railroad, however, maintains an independent organization. It is assessed separately by the State, makes reports to the State and maintains its own roadbed and equipment and has its own employees.

But the attorney general argues that notwithstanding these independent features the road is absolutely controlled and managed by the Grand Trunk Western, that the will of the Grand Trunk Western is the will of the Pontiac, Oxford & Northern, and that this control under the authorities creates a relation which justifies the commission in considering the Pontiac, Oxford & Northern as a part of the Grand Trunk

Western for the purposes of rate making. This contention appears to be supported by two recent cases, one of which has been reviewed by the Federal Supreme Court. *State* v. *Railway Co.*, 133 Minn. 413 (158 N. W. 627); *Minneapolis Civic & Commerce Ass'n* v. *Railway Co.*, 134 Minn. 169 (158 N. W. 817).

In the case first cited the question discussed is whether the Chicago & Northwestern Railway Company was entitled to maintain a joint rate with the Chicago, St. Paul, Minneapolis & Omaha Railway Company. It was shown that the Northwestern owned nearly 51 per cent. of the stock of the Omaha and that the officers and directors were the same, and that the Omaha was operated as a part of the Northwestern system. The Omaha, however, maintained a separate organization, maintained its own roadbed and equipment and had separate employees.

In the last case cited the Chicago, Milwaukee & St. Paul Railway and the Chicago, St. Paul, Minneapolis & Omaha Railway each owned one-half of the stock of a terminal railroad serving certain industries in the city of Minneapolis. The terminal railway maintained a separate organization but its officers were either those of the owning companies or friendly to those companies. The terminal company was used by the Milwaukee and the Omaha in connection with their lines of railway on the same terms. The question arose as to whether the terminal, under these circumstances, was entitled to maintain a switching charge for carload freight either delivered to or received from the Milwaukee and Omaha lines. The questions discussed in these cases are similar to the one involved in this case, and in each one it was urged by the stockholding companies that ownership alone of capital stock in one corporation by another does not create an identity of corporate interests between the two companies, or render the stockholding com-

pany the owner of the property of the other. To this proposition the following cases were cited, which are also cited in plaintiff's brief in this case: *Pullman's Palace Car Co.* v. *Railway Co.*, 115 U. S. 587 (6 Sup. Ct. 194) ; *Peterson* v. *Railway Co.*, 205 U. S. 364 (27 Sup. Ct. 513) ; *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366 (29 Sup. Ct. 527) ; *Interstate Commerce Commission* v. *Stickney*, 215 U. S. 98 (30 Sup. Ct. 66) ; *United States* v. *Railroad Co.*, 238 U. S. 516 (35 Sup. Ct. 873).

Afterwards, on review of the Milwaukee case against the terminal company in the Supreme Court of the United States (247 U. S. 490 [38 Sup. Ct. 553]), the same argument was made and the same authorities cited. In disposing of this contention Mr. Justice CLARKE said in part:

"While the statements of the law thus relied upon are satisfactory in the connection in which they were used, they have been plainly and repeatedly held not applicable where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose, as in this case, of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company or companies. (*United States* v. *Railroad Co.*, 220 U. S. 257 [31 Sup. Ct. 387] ; *United States* v. *Railroad Co.*, *supra*). In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law but regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

The rule which appears to be established by these cases is that where the corporate organization and affairs of one railroad company are controlled and dominated by another railroad company through ownership of stock or lease, the roads must be regarded as identical for the purpose of rate making.

The relations of the Northwestern Railway Company and the Omaha Railway Company, and the relations of the Milwaukee and Omaha companies with the terminal company are substantially the relations of the Grand Trunk Western and the Pontiac, Oxford & Northern Railroad Company. While it is true that the Pontiac, Oxford & Northern maintains a separate corporate organization, that organization is controlled and dominated by the Grand Trunk Western, and in turn its organization is controlled by the Grand Trunk Railway Company of Canada, which owns or leases, directly or indirectly, all the lines which make up the Grand Trunk Railway System.

We are of the opinion that the relations of these railroads as shown by the record justified the railroad commission in considering them as identical for the purpose of rate making.

The order of the commission will be affirmed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred. FELLOWS, J., did not sit.