### OWL FUMIGATING CORPORATION v. CALIFORNIA CYANIDE CO., Inc., et al.

District Court, D. Delaware. March 2, 1928.

No. 579.

1. Corporations ☞585—Ownership of the stock of one corporation by another does not merge the identity of the two.

Ownership alone of the capital stock of one corporation by another does not create an identity of corporate interest between the two, nor render the stockholding company the owner of the property of the other, nor create the relation of principal and agent, representative, or alter ego between the two.

2. Corporations ☞585—Identity of officers and stock ownership, and close affiliation between two corporations, does not establish identity of the corporations.

Identity of officers of two corporations does not establish identity of the corporations, nor does identity of stock ownership and close affiliation and management.

3. Corporations ☞380—Loan of money by one corporation to another does not make borrower agent of lender.

Loan of money by one corporation to another does not make the borrower agent of the lender nor its acts or business acts or business of the lender.

4. Corporations ☞378—If relation between two corporations is such that one is mere agency or department of the other, latter is liable for its wrongful or illegal acts.

If, by reason of stock ownership, common officers, and the relation of debtor and creditor between two corporations, the subsidiary company becomes a mere agency or department of the other, the latter cannot escape liability for wrongful or illegal acts of the subsidiary.

**5. Patents ⬦⟿287(5)—Relation between two corporations held not such as to render one liable for infringement of patents by the other.**

Relation between a Delaware corporation and a California corporation which it caused to be organized, the stock of which it owned, and to which it lent money, *held* not such as to render it liable for infringement of patents by the California company.

In Equity. Suit by the Owl Fumigating Corporation against the California Cyanide Company, Inc., and another, not served nor appearing. On answer of defendant named raising points of law. Bill dismissed.

Livingston Gifford, Richard B. Cavanagh, and Harry C. Bierman, all of New York City, and Charles F. Curley, of Wilmington, Del., for plaintiff.

Dean S. Edmonds (of Pennie, Davis, Marvin & Edmonds) and John F. Neary, both of New York City, for defendant California Cyanide Co., Inc.

MORRIS, District Judge. This patent infringement suit of Owl Fumigating Corporation against California Cyanide Company, Inc., a Delaware corporation, and California Cyanide Company (California), Inc., a California corporation, is based upon four patents—reissue No. 15,248, No. 1,304,747, No. 1,446,093, and No. 1,477,125—having to do with a method of fumigating trees and plants by subjecting the tree or plant to the action of gas produced by the expansion of liquid hydrocyanic acid and with apparatus to make the application. The California company is the operating company. It was not served with process and has not appeared. But the plaintiff, alleging that all the capital stock of the California company is owned by the Delaware company, that the California company has been financed by the Delaware company, that the acts, policies, and property of the California company are directed and controlled by the Delaware company, through common officers and directors, and that, under such direction and control and in conspiracy and conjunction with the Delaware company, the California company has committed the acts of infringement complained of, contends that the Delaware company is liable for the infringing acts of the California company, upon the grounds of agency, alter ego, and contributory infringement. The Delaware company admits the ownership of substantially all the capital stock of the California company, that in common with banks and others, it has made loans of money to the California company, and that in the main the same persons have been and have acted as the officers and directors of the two companies. It denies, however, that the California company has been directed or controlled by the Delaware company, denies that in conspiracy and conjunction with the California company or otherwise, it has committed or contributed to the alleged acts of infringement, and denies that the legal relationship of the Delaware company to the California company is otherwise than that of stockholder and creditor. By its answer, the Delaware company, relying upon equity rule 29, moves that its alleged contributory infringement and alleged liability for infringing acts of the California company be separately heard and disposed of, before the taking of evidence upon the issue of infringement by the California company. To avoid the needless expenditure of time and money in bringing across the continent and taking the testimony of witnesses upon the issues of validity and infringement, if the contention of the Delaware company is sound, the parties agreed that, upon the completion of the testimony touching the liability of the Delaware company for infringing acts of the California company, the trial should be suspended, the liability of the Delaware company determined, and the bill of complaint dismissed, or the trial proceeded with as the finding of the court upon that issue, now before the court under the agreement of the parties, should dictate.

[1] The general rule of law is well settled that ownership alone, of capital stock in one corporation by another, does not create an identity of corporate interest between the two companies, or render the stockholding company the owner of the property of the other, or create the relation of principal and agent, representative, or alter ego between the two. Pullman's Palace Car Co. v. Missouri Pacific Ry. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U. S. 364, 391, 27 S. Ct. 513, 51 L. Ed. 841; United States v. Delaware & Hudson Co., 213 U. S. 366, 413, 29 S. Ct. 527, 53 L. Ed. 836; Interstate Commerce Commission v. Stickney, 215 U. S. 98, 108, 30 S. Ct. 66, 54 L. Ed. 112; United States v. Delaware, Lackawanna & Western R. R. Co., 238 U. S. 516, 529, 530, 35 S. Ct. 873, 59 L. Ed. 1438; Chicago, M. & St. P. Ry. v. Minn. Civic Ass'n, 247 U. S. 490, 500, 38 S. Ct. 553, 62 L. Ed. 1229.

[2] It is likewise true that identity of officers of two corporations does not establish identity of the corporations. F. P. McKay

Co. v. Savery House Hotel Co., 184 Iowa, 260, 168 N. W. 295. Notwithstanding identity of stock ownership and close affiliation and management, distinct corporations must, for some purposes at least, be regarded as separate corporations. Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 88, 40 S. Ct. 82, 64 L. Ed. 141; Marsch v. Southern New England R. Corporation, 230 Mass. 483, 120 N. E. 120. Common officers, directors, and stockholders do not alone make one corporation liable for the infringing acts of the other. Union Sulphur Co. v. Freeport Texas Co. (D. C.) 251 F. 634, 661.

[3] Again the loan of money by one corporation to another does not make the borrower the agent of the lender, or the business and acts of the borrower the acts and business of the lender. Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U. S. 364, 393, 27 S. Ct. 513, 51 L. Ed. 841; United States v. American Bell Telephone Co. (C. C.) 29 F. 17, 42.

Where one corporation is a large creditor of another, the fact that the former takes an active part in the management of the latter to protect its debt does not make it liable for the debts of the debtor company. Chicago Mill & Lumber Co. v. Boatmen's Bank (C. C. A.) 234 F. 41.

[4] Yet it is equally well settled that, upon an inquiry into the legal relationship between two corporations, stock ownership, common officers, and the relation of debtor and creditor are facts not to be ignored, for, if by these means, or otherwise, the subsidiary company becomes a mere agency or department of the holding company, or is used as a blind or instrumentality to perpetrate fraud, justify wrong, defend crime, or defeat public convenience, the holding company cannot escape liability for the acts of the subsidiary. United States v. Del., Lack. & West. R. R., 238 U. S. 516, 529–530, 35 S. Ct. 873, 59 L. Ed. 1438; Majestic Co. v. Orpheum Circuit, 21 F.(2d) 720 (C. C. A. 8). Under such circumstances, courts of equity will not permit mere form to defeat justice and will deal with the substance of the transaction as if separate corporate entities did not exist. Chicago, M. & St. P. Ry. v. Minn. Civic Ass'n, 247 U. S. 490, 501, 38 S. Ct. 553, 62 L. Ed. 1229; De Forest Radio Telephone & T. Co. v. Radio Corp. of America, 20 F.(2d) 598 (C. C. A. 3); Radio-Craft Co. v. Westinghouse Electric & Mfg. Co., 7 F.(2d) 432, 434, 435 (C. C. A. 3); Westinghouse Electric & Mfg. Co. v. Allis-Chalmers Co., 176 F. 362, 367, 368 (C. C. A. 3).

[5] The question remains whether, under the foregoing principles of law and the facts revealed by the record, the Delaware company is liable for infringing acts of the California company, whether the facts are sufficient to establish legal identity or agency, or, assuming the California company to have been an infringer of plaintiff's patents, whether the acts of the Delaware company made it a joint tort-feasor. The facts appear mainly from a stipulation of the parties, supplemented by a few exhibits and the testimony of one witness. Being already compact, the evidence need not be here reviewed at length. To establish that the California company is the agent or alter ego of the Delaware company, the plaintiff relies strongly, if not mainly, upon a letter of March 28, 1923, sent to the stockholders of Air Reduction Company, Incorporated, by C. E. Adams, its president, and a letter of February 10, 1925, sent by C. E. Adams, the president of the Delaware company, to its stockholders. The more pertinent portions of the earlier letter are:

"You are hereby offered the opportunity to purchase on a pro rata basis, and on the terms and conditions below stated, a portion of the capital stock of a corporation, to be called 'California Cyanide Company' (or other similar name), which is being organized by Air Reduction Company in conjunction with California interests headed by Mr. F. W. Braun, of Los Angeles.

"The purpose is to erect a plant near Los Angeles for the manufacture, by the fixation of atmospheric nitrogen, of hydrocyanic acid, for which there is large demand for use in the fumigation of citrus fruit trees in Southern California, and also for the manufacture of sodium cyanide, for which there is demand in the industries and in the mining of precious metals. The plant which is now under construction is designed to operate under processes which are the outcome of research work done in the Air Reduction Company's laboratories. It is believed that in essentials these processes have been protected by patents, and applications for patents, which will be transferred to the California Cyanide Company. These patents and processes will be supplemented by others relating particularly to the application of cyanide products to industrial purposes which are now controlled by Mr. F. W. Braun and his associates, and which will also be turned over to the California Cyanide Company. Certain other patents relating to the manufacture of cyanides now owned by the Synthetic Research Company (of

California) will also be purchased by the company for thirty-two thousand dollars ($32,000). No royalties are to be paid by the company on any patents transferred to it. Careful investigation indicates a large market for the company's products in territory which its plant will be able to serve advantageously. This favorable location, and the low cost of production which should result from the controlled processes, are expected to give the company valuable advantages over other manufacturers of hydrocyanic acid and sodium cyanide. * * *

"California Cyanide Company will be organized under the laws of Delaware, with $1,100,000 par value, eight per cent. preferred stock, and 43,000 shares of common stock without nominal or par value. * * *

"In view of certain provisions of the California laws, a separate corporation, of the same or similar name, and having the same, or substantially the same, officers and directors, will be organized in California, to erect, equip and operate the plant and carry on the business. All of the capital stock of the California corporation, except qualifying shares, will be acquired and held by the Delaware corporation."

The part of the letter of February 10, 1925, stressed by the plaintiff are the words "for extensions and improvements to the company's plant and equipment," found in the following paragraph of that letter:

"Accompanying this letter is the formal notice of a special meeting of the stockholders of the company to be held on March 4, 1925. It is proposed at this special meeting to authorize an issue of $1,250,000 principal amount of five year six per cent. convertible gold debenture bonds, and, with the proceeds of such issue, to take up the entire floating indebtedness of the company amounting to approximately $1,100,000, now owing to Air Reduction Company, Incorporated, and to provide additional funds for working capital and for extensions and improvements to the company's plant and equipment."

It seems to me, however, that the statements of the letters were not intended to and do not describe the legal relationship between the two companies. City of Holland v. Holland City Gas Co. (C. C. A.) 257 F. 679, 683. The testimony of Adams is that, at the time of the organization of the two companies, the plan was that other subsidiary companies would be subsequently formed from time to time, to operate in different fields, and that the reason this has not been done is due to the lack of success of the California company. I see no reason to doubt

the accuracy either of his memory or of his statement. In fact, his statement finds corroboration in the nonexclusive character of the patent licenses granted to the California company, and in the arrangement that inventions of employees of the California company should be assigned to the Delaware or holding company. The lack of immediate success on the part of the California company is corroborated not only by the loan but by the second paragraph of the letter of February 10, 1925, to the stockholders of the Delaware company, which states in part:

"The company began operations late in 1923, but the production at the plant has been frequently interrupted and curtailed by mechanical difficulties due for the most part to lack of experience in the use of the company's new nitrogen fixation process on a commercial scale. Its operations were further handicapped by a very dry season in Southern California, which resulted in a demand considerably below the normal for liquid hydrocyanic acid for use in the citrus fruit growing districts. Although the net result of these conditions was to create a loss instead of a profit as of December 31, 1924, nevertheless, nothing fundamental has arisen during this first year of formative operation to discourage the management of the company with regard to the commercial value of its processes."

While the relationship between the companies is close and the Delaware company has in a measure directed and controlled the California company, I am unable to find that it has, in doing so, gone beyond the authority with which it is legally vested by its relations of stockholder and creditor. I think the facts are not sufficient to convert those relations into the legal relationship of agency or alter ego, or to show that the California company was created or has been used to justify wrong, protect fraud, or defend crime. See Perey v. Perey Mfg. Co. (D. C.) 17 F.(2d) 774.

Nor am I able to find that the defendant is a joint or contributory infringer. It does not appear that the California company was organized to infringe plaintiff's patents, or that it was unable to carry out its objects and purposes without infringing them. When the Delaware company came to the financial relief of the California company in the spring of 1925, it did so to protect its original investment by enabling the California company to pay off its debts with part of the loan, and with the remainder to carry on its business generally. The Delaware company did not, as was done by the defend-

ant in the Union Sulphur Case, either supply infringing equipment or money with the intent or understanding that it should be used to purchase equipment to be put to infringing use.

The bill of complaint must be dismissed.