AMERICAN SHEET & TIN PLATE CO. v. UNITED STATES, and five other cases.

Nos. 3110–3113, 3130, 3136.

District Court, W. D. Pennsylvania.

May 23, 1936.

712

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff American Sheet & Tin Plate Co.

Patterson, Goehring, McClintock & Collin, of Pittsburgh, Pa., and Walter, Burchmore & Belnap, of Chicago, Ill., for plaintiffs Allegheny Steel Co., Pittsburgh Plate Glass Co., Weirton Steel Co., and West Leechburg Steel Co.

Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., for United States Interstate Commerce Commission.

Before DAVIS, Circuit Judge, and GIBSON and SCHOONMAKER, District Judges.

SCHOONMAKER, District Judge.

The six above-entitled cases involving similar issues were brought under the Act of Congress of October 22, 1913, 38 Stat. at Large 219, 28 U.S.C.A. §§ 41 (28), 45, 46, 47 (amending Act June 18, 1910, 36 Stat. 519), to enjoin orders of the Interstate Commerce Commission requiring railroad companies to discontinue payments of allowances to plaintiffs for the performance of certain terminal service commonly called "spotting."

These cases were heard before J. WARREN DAVIS, Circuit Judge; R. M. GIBSON and F. P. SCHOONMAKER, District Judges.

By agreement of counsel in open court, the trials of these six cases were consolidated; they were heard and are to be determined on one record.

The orders of the Interstate Commerce Commission involved in these suits were entered in a proceeding entitled "Ex Parte No. 104, Practices of Carriers affecting operating Revenues or Expenses, Part II, Terminal Services."

The specific orders involved in these suits were issued respectively in connection with supplemental reports to that in "Ex Parte No. 104," dealing with the terminal practices obtaining at the particular industrial plants of the plaintiffs, as follows:

American Sheet & Tin Plate Company Terminal Allowance, 209 I.C.C. 719 (July 5, 1935).

Allegheny Steel Company Terminal Allowance, 209 I.C.C. 273 (June 7, 1935).

Pittsburgh Plate Glass Company Terminal Allowance, 209 I.C.C. 467 (June 25, 1935).

Weirton Steel Company Terminal Allowance, 209 I.C.C. 445 (June 24, 1935).

West Leechburg Steel Company Terminal Allowance, 210 I.C.C. 213 (July 29, 1935).

Pittsburgh Plate Glass Company Terminal Allowance, 210 I.C.C. 527 (September 12, 1935).

The plaintiffs all operate manufacturing plants which are located in the vicinity of Pittsburgh, Pa., with the exception of the Pittsburgh Plate Glass Company, which, in addition to a plant in the Pittsburgh District at Ford City, Pa., also operates a plant at Crystal City, Mo. The plants of the other plaintiffs are located respectively as follows: American Sheet & Tin Plate Company, Vandegrift and Scottdale, Pa., and Wellsville, Ohio; the Allegheny Steel Company, at Breckenridge, Pa.; the Weirton Steel Company, at Weirton, W. Va.; and the West Leechburg Steel Company, at Leechburg, Pa.

All of these plants are served by the Pennsylvania Railroad Company, a common carrier engaged in interstate commerce, except the plant of the Pittsburgh Plate Glass Company located at Crystal City, Mo., which is served by the Missouri Pacific Railroad Company and the St. Louis, San Francisco Railway Company, common carriers engaged in interstate commerce.

At each of plaintiffs' plants, terminal switching is performed in connection with the receipt and delivery of freight under the provisions of duly filed and published railroad tariffs.

We quote from a typical tariff (Pennsylvania R. R. Tariff), effective June 1, 1917, applying to coal and coke traffic switched by American Sheet & Tin Plate Company at Vandegrift, as defining this switching service:

"On all carload revenue shipments, destined to or coming from the plant of the

American Sheet and Tin Plate Company, the latter company performs the terminal switching service for account of the Pennsylvania Railroad Company.

"The American Sheet and Tin Plate Company will be allowed for such service, out of the current Vandegrift, Pa., rate, the actual cost of service performed, as specified in monthly bills computed and submitted in accordance with the terms of agreement dated April 7, 1917, between the American Sheet & Tin Plate Company and the Pennsylvania Railroad Company, but not exceeding $1.10 per car."

The defendant railroad, pursuant to the several recited orders of the Interstate Commerce Commission, undertook to cancel and discontinue these switching allowances by tariffs; the wording of the tariff for the American Tin Plate Company at Vandegrift being typical of all:

"The Pennsylvania Railroad Company —Cancellation Notice—Local Freight Tariff—Terminal Allowances to American Sheet and Tin Plate Company at Vandegrift, Pa. * * * is hereby cancelled. Terminal allowances discontinued. Effective August 22, 1935. In compliance with Eighteen Supplemental Report and Order of Interstate Commerce Commission in Ex Parte No. 104, Part 2, July 5, 1935."

The plaintiffs contend that these cancellation orders are unlawful because this "spotting" terminal switching service is a transportation service which the railroads are required by law to perform, and if the plaintiffs themselves perform it, they are entitled to compensation from the railroads. The Interstate Commerce Commission, on the other hand, contends that this service is not transportation service, because that service lawfully ends when the railroads deliver the car for loading or unloading at the interchange of holding switch of the plant being served, and therefore the service complained of is a device to make an unlawful rebate to shippers.

The plaintiffs contend that the line-haul tariff rates cover not only delivery of cars to the interchange track of the industry, but also the delivery of cars beyond that point on a system of tracks leading to mills and warehouses, and "spotting" them at convenient points for loading and unloading; and that if the plaintiffs perform that service they are entitled to an allowance from the railroad company for that service.

The Interstate Commerce Commission contends that the line-haul tariff rate is for delivery of the freight car only at the interchange switch, and that the railroad cannot be called upon either to "spot" freight cars at mill and warehouse platforms or to pay the shipper for doing what is exclusively its own work.

The question to be decided in the instant case is therefore whether the switching done by the plaintiffs within their own plants between the interchange or storage tracks and the platforms of their mills and warehouses is work that the railroads are required to do as a part of transportation.

There appears to be no exact formula that can be applied in answering this question. The most that we can get from the decided cases is that the limits of place within which delivery is due will vary with varying conditions, and that such delivery is required, as is customary and reasonable. Mitchell Coal & Coke Co. v. Pennsylvania R. R. Co., 230 U.S. 247, 263, 33 S. Ct. 916, 57 L.Ed. 1472; New York Central & H. R. R. R. Co. v. General Electric Co., 219 N.Y. 227, 114 N.E. 115, 117, 1 A.L.R. 1417.

The Interstate Commerce Act, § 1 (3), U.S.C.A. title 49, c. 1, § 1 (3), Definitions, defines "transportation" thus:

"The term 'transportation' as used in this chapter shall include locomotives, cars, and other vehicles, vessels, and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof, and all services in connection with the receipt, delivery, elevation, and transfer in transit, * * * and handling of property transported."

This section further provides in the succeeding paragraph (4) that "It shall be the duty of every common carrier * * to provide and furnish such transportation upon reasonable request therefor."

However, it is certain that "spotting service" is "transportation" within this definition, and therefore a common-carrier service up to certain limits, and includes the placement of cars in position accessible to the consignors and consignees respectively for loading and unloading. By long-continued custom and practice, such placements are made both on the carriers' tracks within their established terminals and on

their own right of way, and also on private industrial tracks off the carriers' right of way on the private property of the industries served. Such services are included in the established rates, unless in express terms the published tariffs otherwise provide. Car Spotting Charges, 34 I.C.C. 609.

We, therefore, reach the conclusion that "spotting services" are recognized in law as common-carrier service to which the shippers are entitled, and which the carriers are in duty bound to perform. In fact, the courts have held that writs of mandamus and mandatory injunctions will lie to enforce this right and compel this duty. Missouri Pacific R. R. Co. v. Larabee Flour Mills Co., 211 U.S. 612, 29 S. Ct. 214, 53 L.Ed. 352.

■ It is also certain that the carriers may either do this "spotting service" themselves or engage others, including shippers and owners of property transported to do it, and pay therefor a reasonable compensation out of their freight rates, without violating the law. Mitchell Coal & Coke Co. v. Pennsylvania Railroad Company, 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472. But this will not include special or particular "spotting service" such as described in New York Central & Hudson River R. R. Co. v. General Electric Company, 219 N.Y. 227, 114 N.E. 115, 1 A.L.R. 1417, over an intricate system of trackage when the railroad is not permitted to enter to extend any "spotting service" at all.

Typical of the circumstances which relieve the carrier from the duty of "spotting" cars may be noted: (a) Where an industry refuses to permit the railroad to enter upon the private industrial tracks; (b) where the physical condition and layout of the private industrial tracks will not accomodate the carrier's locomotive power without hazard or excessive delay; (c) where the industry occupies large areas with many scattered plants, connected by an intricate system of industrial tracks and used chiefly as industrial facilities.

■ In the instant case, we find no circumstances which would relieve the carriers involved from the duty of "spotting" the cars as a part of the transportation imposed upon them by law. We further find that such "spotting service" is covered by the railroad's published tariffs, and is a

part of the line-haul freight charge, and that where the plaintiffs do this "spotting service" themselves, they are entitled to the compensation provided for in the published freight tariffs.

■ Commissioner Mahaffie, dissenting from the majority report of the commission, has, in his report contained in the exhibits attached to the plaintiffs' petitions in the instant cases, clearly stated why the cease-and-desist orders issued by the commission in the instant cases are not based on the jurisdictional findings necessary to support these orders and that the injunction sought should be granted in all these cases.

As we view the law, the commission was without power to prohibit entirely allowances for doing "spotting service." It could review these allowances and determine whether they were unreasonable, unjustly preferential, unduly discriminatory, or otherwise unlawful. Section 15, pars. (1) and (13) of Interstate Commerce Act (49 U.S.C.A. § 15 (1, 13); Interstate Commerce Commission v. Louisville & Nashville Railroad Company, 227 U.S. 88, 92, 33 S.Ct. 185, 57 L.Ed. 431; Southern Pacific Company v. Interstate Commerce Commission, 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283; Interstate Commerce Commission v. Stickney, 215 U.S. 98, 105, 30 S.Ct. 66, 54 L.Ed. 112; Interstate Commerce Commission v. Northern Pacific Railway Company, 216 U.S. 538, 544, 30 S. Ct. 417, 54 L.Ed. 608; United States v. Baltimore & Ohio Railroad Company, 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587.

No such findings were made in the instant cases. The courts have uniformly held that to support a cease-and-desist order by the commission, it must make the necessary quasi-jurisdictional findings of fact, or the order is void. Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291; United States v. Chicago, Milwaukee, St. Paul & P. Railway Company, 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023.

Our conclusion is that the orders of the commission complained of are beyond its statutory power, and that the injunction prayed for should issue.

Findings of fact, conclusions of law, and decree in accordance with this opinion, may be submitted.