## SUN–MAID RAISIN GROWERS ASS'N et al. v. UNITED STATES.

### No. 21459 S.

District Court, N. D. California, S. D.

July 3, 1940.

J. Richard Townsend, of San Francisco, Cal., for plaintiffs.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., for defendant.

Lillick, Olson, Levy & Geary, of San Francisco, Cal., for intervener.

Before WILBUR, Circuit Judge, and ST. SURE and ROCHE, District Judges.

WILBUR, Circuit Judge.

The Raisin Growers initiated a proceeding before the Maritime Commission charging numerous steamship companies engaged in foreign trade with an "unjust and unreasonable practice" in violation of § 17 of the Shipping Act, 39 Stat. 734, 46 U.S.C.A. § 816.[1] The practice alleged to violate § 17, supra, related to the fixing of a separate handling charge for the handling of freight after delivery on the dock from the point of delivery to the ship's tackle. For this service a "handling charge" of 40 cents per ton was made. It is not contended that this rate is excessive. On the contrary, the intervening steamship companies claim that the 40 cent charge will not cover the increases in cost due to a rise in the cost of labor since the establishment of the freight rate which the handling charge supplements. Neither is it contended that the freight rate is excessive. The contention of the shippers is that the cost of handling freight between the point of delivery to the carrier on the dock and the ship's tackle should be included in the freight rate and should not be made as a separate and distinct charge. It is claimed that the practice of making a separate charge for this service is unlawful and that it injures the shippers because of their inability to pass it on to the purchasers of their product as would be the case if incorporated in the freight rate. The shippers claim that the method of fixing a separate handling charge puts an unreasonable burden upon them without corresponding benefit to the steamship companies and that it is therefore unreasonable and unjust.

The Maritime Commission upheld the practice of the steamship companies as just and reasonable and the plaintiffs have invoked the jurisdiction of this court under § 31 of the Shipping Act of 1916, supra, as amended, 46 U.S.C.A. § 830, 39 Stat. 738; and 28 U.S.C.A. §§ 41, sub. 28, and 45 to 48, inclusive.

The plaintiffs do not complain that the freight charge, plus the handling charge, is excessive or unreasonable or unjust. In support of their contention that the setting up of a separate handling charge is unlawful the plaintiffs rely upon a number of decisions of the Supreme Court relating to the handling of livestock and other freight. Under varying circumstances the propriety of making a separate charge for unloading livestock has been considered by that court. One of these cases (Covington Stock-Yards Co. v. Keith, 139 U.S. 128, 11 S.Ct. 461, 35 L.Ed. 73) dealt with the common carrier's duty to deliver freight under the common law. It was held that the freight rate covered the cost of unloading the livestock transported and that a separate charge for that service was an exaction of double payment for the unloading and, hence, an unlawful exaction. The reasoning of this opinion is not applicable to the case at bar where the tariff merely separates the freight charge into two items. As to decisions based upon the "act to regulate commerce" (passed February 4, 1887, 24 Stat. 379, 49 U.S.C.A. § 1 et seq.) and its amendments, cited by the plaintiffs, it should be noted that the act is not applicable to the traffic here involved. Nevertheless, as the plaintiffs so strongly rely upon such decisions they will be further considered.

The "act to regulate commerce", supra, expressly provided for publication of schedules by the common carrier which "shall also state separately the terminal charges and any other rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates and fares and charges". 24 Stat. 379, 380, § 6. This provision has been carried in subsequent amendments and reenactments of statutes regulating interstate commerce and is now incorporated in the transportation acts of 1920, 49 U.S.C.A. § 6(1).

In another case cited by the plaintiffs, (Interstate Commerce Comm. v. Chicago, B. & Q. R. Co., 186 U.S. 320, 22 S.Ct. 824, 46 L.Ed. 1182) arising under the Act to Regulate Commerce, supra, a separate terminal charge was made by the Railroad Company and was sustained by the court, but the court, in that case, expressly re-

---

[1] Shipping Act, 1916, § 17, 46 U.S.C.A. § 816: "Every such carrier and every other person subject to this chapter shall establish, observe, and enforce just and reasonable regulations and practices relating to or connected with the receiving, handling, storing, or delivering of property. Whenever the board finds that any such regulation or practice is unjust or unreasonable it may determine, prescribe, and order enforced a just and reasonable regulation or practice."

served the question as to whether or not such separate charge would be appropriate where the Railroad Company owned the terminal facilities. A similar conclusion was reached in Interstate Commerce Commission v. Stickney, 215 U.S. 98, 30 S.Ct. 66, 54 L.Ed. 112, cited by the plaintiffs, in which the separate terminal charge went to a connecting carrier and was upheld by the court.

In Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184, cited by plaintiffs, the unlawful practice denounced was not the making of a separate terminal charge or a separate unloading charge, but was the imposition of an additional charge by the initial carrier of 25 cents per car for unloading, without amending its tariff, which already included the cost of unloading as theretofore charged by the terminal company and paid to it by the initial carrier.

There is nothing in any of these Supreme Court decisions cited by the plaintiffs which justifies the conclusion that the railroads were prohibited by law from making a separate charge for items' involved in transportation which might otherwise be included in the general freight rate if the tariff schedules make it clear that they are not so included in the general freight rate. Other decisions assume, if they do not formally approve, separate charges in a tariff.

The Supreme Court, in Atchison, T. & S. F. Ry. Co. v. United States, 232 U.S. 199, 34 S.Ct. 291, 58 L.Ed. 568, assumed the propriety of stating in the tariff schedules a separate charge for refrigeration of oranges carried by the railroad. This court, in Alton & Southern Ry. et al. v. United States, 49 F.2d 414, assumed that a separate "icing" charge was proper in a railway tariff and considered at length the reasonableness of the separate "icing" charge and the relation of such a charge to the freight rate for transportation of the poultry and dairy products covered by the tariff. All the parties assumed the legality of such a separate charge.

We conclude that neither the common law nor the Shipping Act, 46 U.S.C.A. § 816, Shipping Act § 17, supra, forbids the separation, by a steamship company, of a freight charge into some of its component elements if the tariff clearly so provides.

As to plaintiffs' claim that the practice of making a separate handling charge is unreasonable and unjust, the most that can be said in its support is that the practice is out of harmony with the legitimate and well established business methods. The difficulties complained of by the plaintiffs arise in part from the terms of the usual contracts entered into between the plaintiffs and their customers concerning the payment of freight. It is well established and is conceded that the duty of moving freight from the place of delivery on the dock to the ship's tackle and thence to a place on the dock at the port of delivery is a part of the duty of the carrier transporting the freight from port to port (Puget Sound Stevedoring Co. v. Tax Commission of the State of Washington, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68) and in the absence of a special handling charge the freight rate would cover this duty. That is to say, the freight rate would cover the stevedoring charge. A contract between the shipper and the consignee, by which the latter agreed to pay the freight from port to port would necessarily include an obligation to pay that freight whether it is stated in one or more items, and in the instant case would involve the payment of the handling charge.

It may be conceded that there is some practical difficulty in explaining to a consignee that the separate handling charge of 40 cents per ton is a part of the freight paid the carrier although separately itemized. The question of whether or not under the circumstances the separate handling charge was unjust or unreasonable and, therefore, in violation of the statute, § 17, supra, 46 U.S.C.A. § 816, was submitted to the Maritime Commission. The court is neither called upon nor authorized to substitute its judgment for that of the Maritime Commission, nor to decide the matter de novo upon the voluminous evidence submitted to the Board and presented to the court. The court's task is confined to determining whether or not the decision of the Maritime Commission that the practice of making a separate handling charge is not unjust or unreasonable is supported by the evidence. Adams v. Mills, 286 U.S. 397, 410, 52 S.Ct. 589, 76 L.Ed. 1184; 46 U.S.C.A. § 830; Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659; Rochester Telephone Corp. v. United

962

States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

■ The evidence before the Maritime Commission sustains the proposition that the practice of making a separate charge at the port of delivery for handling the freight from the ship's tackle to the dock is wellnigh universal. To absorb such a charge in the freight rate at the point of delivery and not at the point of receipt would involve a lack of uniformity in practice. Assuming, without deciding, that the practice of making a separate handling charge is a "practice" within the meaning of the Shipping Act, such that if it is unreasonable or unjust it can be controlled by the Maritime Commission, it is quite clear that the regulation of such a practice lies wholly within the discretion of the Maritime Commission and that its decision on such a matter can be overcome only where it has abused its discretion. It is clear there is no such abuse in the case at bar.

We find that there is substantial evidence to support the conclusions of the Maritime Commission, that these conclusions are in conformity with law.

Affirmed.